UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Gregory B. Monaco, *etc.*, *et ano.*,

                    Plaintiffs,                    CV-98-3386 (CPS)


        - against -                                MEMORANDUM
                                                   OPINION AND
                                                   ORDER

Sharon Carpinello, *etc., et alia*,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

        Plaintiffs Gregory B. Monaco, on behalf of himself and
similarly situated individuals facing civil commitment, and the
Mental Disability Law Clinic of Touro Law Center ("the Clinic")
bring this class action for declaratory and injunctive relief
against the following defendants: Sharon Carpinello, in her
official capacity as Acting Commissioner of the New York State
Office of Mental Health ("OMH"); Catherine Cahill, in her
official capacity as Justice of the East Hampton Town Justice
Court, on behalf of herself and all other local criminal court
judges in New York State; Benjamin Chu, in his official capacity
as the Director of the New York City Health and Hospitals
Corporation ("HHC"); Mark Sedler, in his official capacity as
Chairman of the Department of Psychiatry at University Hospital
of the State University at Stony Brook; Kenneth Skodnek, in his
official capacity as Chairman of Psychiatry at Nassau University

Medical Center ("NUMC"); Arnold Licht, in his official capacity
as Director of the psychiatric unit of Long Island College
Hospital; Alfred Tisch, in his official capacity of Sheriff of
Suffolk County; and Martin Horn, in his official capacity of
Commissioner of the New York City Department of Corrections.[1]

Plaintiffs allege violations of the Fourth Amendment, the
Due Process and Equal Protection Clauses of the Fourteenth
Amendment to the United States Constitution, and 42 U.S.C.
§ 1983, as well as state law claims for false imprisonment
negligence, and medical malpractice.  As amended, the complaint
contains two major components: 1) a challenge to the
constitutionality of the practices of Cahill, Horn, and Tisch in
unnecessarily keeping confined individuals found incompetent to
stand trial for minor felonies and misdemeanors and those
awaiting such a determination; 2) a challenge to the
constitutionality of the procedures used by Chu, Sedler, Skodnek,
and Licht to involuntarily hospitalize individuals deemed
mentally ill.

Previously, I found it appropriate to certify a plaintiff
class of all individuals who have been or will be: (1) charged

---

[1] In a previous decision, this Court dismissed the claims against
Licht and granted summary judgment in favor of four other defendants.
In their fifth amended complaint, plaintiffs reasserted these claims
against these defendants in order to preserve their right to appeal
this Court's judgment. *See* 6 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE
§ 1476 at 560 (2d ed. 1990).

with a minor felony or misdemeanor; (2) evaluated to determine whether or not they are competent to stand trial; and (3) found by court appointed psychiatrists to lack the capacity to stand trial and await a determination of the competency issue by the local criminal court.

I also found it appropriate to certify a subclass, to be represented by plaintiff Gregory Monaco, of all individuals who have been or will be: (1) charged with a minor felony or misdemeanor; (2) evaluated to determine whether they are competent to stand trial; (3) found by court appointed psychiatrists to lack the capacity to stand trial; and (4) confined to a local jail while awaiting a determination of the competency issue by the local criminal court.

Presently before the Court is plaintiff's request for a fairness hearing concerning the proposed settlement of claims seven through ten. Before such a hearing may be conducted I must first make a preliminary determination of fairness and must address the adequacy of the proposed notice to the class.

**BACKGROUND**

The relevant claims for relief reads as follows:

Seventh Cause of Action:

As a result of physicians at OMH and HHC operated
facilities, Stony Brook and NUMC certifying individuals
who have been evaluated for civil commitment purposes
as dangerous because the physician believe that such
individuals' clinical condition warrants in-patient
care and treatment, defendants Carpinello, Chu,
Skodnek, Sedler, and Licht are responsible for the
confinement of non-dangerous individuals, which
violates the Fourteenth Amendment to the United States
Constitution and 42 U.S.C. §1983.

Eighth Cause of Action:

By failing to examine and employ significant criteria
related to the likelihood of causing harm when
examining allegedly mentally ill individuals for civil
commitment purposes, physicians at OMH and HHC operated
facilities, Stony Brook and NUMC make clinical
determinations that do not promise some degree of
accuracy and such decisions result in the confinement
of nondangerous individuals, both of which violate the
Fourteenth Amendment to the United States Constitution
and 42 U.S.C. §1983.

Ninth Cause of Action:

By conducting clinical evaluations that frequently do not last more than five or ten minutes when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony brook, and NUMC make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individual [sic], both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

Tenth cause of Action:

By failing to apply the statutory criteria of the provisions of the New York Mental Hygiene Law pursuant to which the physicians act, physicians at HHC operated facilities, Stony Brook, and NUMC violated the procedural component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

The plaintiffs and defendant Chu have agreed to settle these

claims for relief. Plaintiffs have provided a copy of the
proposed settlement. It reads as follows:

Definitions:
1. For the purposes of this Stipulation, "psychiatric
emergency staff" refers to any physician assigned to
the psychiatric emergency service at HHC who is
authorized to involuntarily admit patients to HHC
psychiatric units pursuant to article 9 of the New York
Mental Hygiene Law.

Risk Assessment Form
2. HHC agrees to require psychiatric emergency staff to
use a standard form to evaluate patients for
involuntary civil commitment to any HHC facility. This
form shall require psychiatric emergency staff to
document any risk factors for danger to self or others.

3. The parties agree that the Psychiatric Emergency
Department Assessment From annexed hereto as Exhibit A
satisfies the requirements of paragraph 2 above. HHC
may revise this form, except that any revised form must
require psychiatric emergency staff to document any
risk factors for danger to self or others, and
revisions may only be made after 30 days advance notice
to plaintiff's counsel.

Training
4. HHC agrees to provide training for all current
psychiatric emergency staff, and all new psychiatric
emergency staff who begin working at psychiatric
emergency services in HHC hospitals during the term of
this Stipulation, on the following topics: a) the legal
standards for involuntary civil commitment pursuant to
Article 9 of the New York Mental Hygiene Law; b) risk
factors relevant to evaluating whether a patient is
dangerous to self or others; c) use of the HHC form
described in paragraph 2 above; and d) the legal
requirements for involuntary medication of patients.
The training materials will convey that involuntary
civil commitment decisions are legal determinations as
well as clinical determinations. The training materials
concerning involuntary medication will instruct staff
to write involuntary medication orders consistent with
the requirements of 14 N.Y.C.R.R. 527.8(c)(1), and will
further instruct staff not to write medication orders
that authorize the intramuscular administration of

psychotropic medication on a "PRN" basis for agitation
alone.[2] This training shall be completed within 150
days of the date when this Stipulation is "so ordered"
by the Court. HHC will provide plaintiffs' counsel with
a copy of the final training materials that are
described in this paragraph.

5. HHC agrees to provide additional in-person training
for HHC hospital personnel responsible for direct
supervision of psychiatric emergency staff, concerning
their obligation to ensure that psychiatric emergency
staff comply with Article 9 of the Mental Hygiene Law
when making involuntary commitment decisions. This
training shall be completed within 150 days of the date
when this Stipulation is "so ordered" by the Court.

Monitoring
6. Three times during the term of this Stipulation, HHC
will provide plaintiffs' counsel with copies of
commitment certificates, and the form described in
paragraph 2 above, for a systematically selected sample
of 25 patients involuntarily committed during the previous three-
month period, in the psychiatric emergency department at each of
the following facilities: Bellevue Hospital Center, Kings County
Hospital Center, and Elmhurst Hospital Center (for a combined
total of 75 patients). The names and other personally
identifiable information concerning individual patients and their
family members and individual HHC staff members will be redacted
from the files, and the files will not be disclosed by
plaintiffs' counsel to any party other than the Court. If any
such documents are filed with the Court for any reason they shall
be filed under seal. These documents will provided at the end of
the ninth month, fifteenth month and twenty-second month after
this Stipulation is "so ordered" by the Court.

---

[2] The forcible administration of medicine was not addressed in the
complaint in this case. Plaintiff explains it requested access to HHC
facilities in order to offer patient's legal services in connection with any
wrongful determination of dangerousness. In this Court's December 20, 2002
Memorandum Opinion and Order the Court granted plaintiffs right of access.
However, that decision was stayed pursuant to defendants' Rule 23(f)
application to the Second Circuit. Accordingly, the Law Center filed a new
suit entitled *Mental Disability Law Clinic v. Marcos*, 02-CV-6131, in which the
Law Clinic sought access both to offer legal services in connection with any
wrongful determination of dangerousness and in connection with any wrongful
forcible medication of patients. Thereafter, the Second Circuit denied the
defendants' application pursuant to 23(f). Accordingly, the parties are also
in the process of settling the *Marcos* action.

7. HHC and plaintiffs' counsel shall review the documents provided pursuant to paragraph 6 above within 30 days of the date when the documents are produced. The purpose of this review will be to ensure that psychiatrists are appropriately using the form described in paragraph 2 above to assist them in making commitment determination. The parties agree that this review will <u>not</u> involve formally challenging in Court the propriety of involuntary commitment decisions that were made in individual cases.

8. After the parties complete each review described in paragraph 7 above, plaintiffs' counsel may request a meeting with HHC to discuss the results of the review. When plaintiffs' counsel requests such a meeting, plaintiffs' counsel shall send HHC's counsel a written summary of the issues that plaintiffs' counsel would like to discuss at the meeting. The meeting shall take place a reasonable time after HHC's counsel receives the written summary. For defendants, any such meeting would be attended by one or more attorneys from the Office of the Corporation Counsel; one or more attorneys from HHC's Office of Legal Affairs; and at least one supervisory or managerial staff member at HHC who: a) is involved in training or supervising psychiatric emergency staff at Bellevue Hospital Center, Kings County Hospital Center, or Elmhurst Hospital Center; b) works in a managerial position at HHC's central office in the Office of Behavioral Health or any successor office that is involved in implementing settlement; or c) is involved in corporate-wide training relating to this settlement. At any such meeting, the parties would discuss the results of the review, including whether any corrective action may be appropriate. On consent of plaintiffs and HHC, any such meeting could take place at the Courthouse and involve the Magistrate Judge assigned to this case, on a date convenient for the Court.

<u>Jurisdiction</u>
9. This Court shall retain jurisdiction over this Stipulation for the purposes of modification and enforcement until two years after the date on which it is "so ordered" by the Court. At the end of that time, the Court's jurisdiction shall end, the terms of this Stipulation shall expire, and all claims in this action against HHC shall be dismissed with prejudice. Nothing in this paragraph shall be construed as a limitation on

plaintiff's right to move to enforce the stipulation in
accordance with ¶¶ 12 and 13 of this Stipulation, or of
the parties' right to negotiate an extension of the
agreement on consent of all parties to the Stipulation.

10. During the time when this Stipulation is in effect,
plaintiffs agree not to file any new litigation seeking
systemic relief against HHC or any of its hospitals
pertaining to the subject matter of this action.
Nothing in this Stipulation shall be construed as
precluding any party from bringing an action or
proceeding seeking systemic relief against HHC or any
of its hospitals concerning the issue of involuntary
medication at HHC.  Plaintiff Mental Disability Law
Clinic agrees that, if it is contemplating commencing
any such action, it will provide counsel for HHC with
at least 60 days prior notice concerning the
contemplated action. Nothing in this Stipulation shall
be construed as preventing plaintiff Mental Disability
Law Clinic from filing a new action against HHC for
systemic declaratory, injunctive or other equitable
relief based on any claims arising after the expiration
of the terms of this stipulation.

11. Plaintiffs shall discontinue with prejudice the
action pending in this Court titled <u>Mental Disability
Law Clinic v. Marcos,</u> 02-CV-6131 (CPS). A copy of the
stipulation of discontinuance that shall be filed with
the Court is attached as Exhibit B.

<u>Enforcement</u>
12. During the term of this Stipulation, plaintiffs may
move to enforce Stipulation only if plaintiffs have
evidence that HHC has a) substantially failed to
require psychiatric emergency staff to use the form
described in paragraph 2 above; b) substantially failed
to complete the training required by paragraphs 4 and 5
above; or c) substantially failed to provide the
documents, complete the review, or participate in the
meetings described in paragraphs 6 through 8 above.
Should plaintiffs move to enforce the Stipulation,
defendants shall be considered to be in compliance with
the Stipulation unless plaintiffs establish that
defendants have substantially failed to comply with
these requirements. Non-systemic violations of these
requirements shall not form a basis for a motion for
enforcement or a finding of non-compliance. In the
event the Court finds that HHC has substantially failed

to comply with any of these requirements, it may grant
relief that is appropriate to cure such non-compliance.
Any such relief shall be narrowly drawn, and extend no
farther than necessary to cure the non-compliance.


13. At least sixty (60) days prior to making any motion
to enforce this Stipulation pursuant to paragraph 12 or
this Stipulation, plaintiffs shall provide HHC with
written notice of the nature, specifics and evidence of
the claimed violation(s) of the Stipulation in order to
give HHC an opportunity to cure such alleged
violation(s). The parties shall thereafter attempt to
resolve the allegation(s) of non-compliance within
sixty (60) days of plaintiffs' counsel providing
written notice consistent with the terms of this
paragraph, plaintiffs may filed a motion in accordance
with paragraph 9 of this Stipulation.

General Provisions
14. Nothing contained herein shall be deemed to be an
admission by HHC or the City of New York of liability
or the truth of any of the allegations set forth in the
complaint, or that they have in any manner or way
violated plaintiffs' rights, or the rights of any other
person or entity, as defined in the constitutions,
statutes, ordinances, rules or regulations of the
United States, the State of New York, the City of New
York, or any other rules, regulations or bylaws of any
department or subdivision thereof.


15. This Stipulation is solely for the purposes of
settlement, and does not reflect the positions of the
parties in any other judicial or administrative action
or proceeding. This Stipulation shall not be admissible
in, nor is it related to, any other judicial or
administrative action or proceeding or settlement
negotiations, except that any party may use this
Stipulation in connection with any subsequent action or
proceeding brought o enforce this Stipulation.


16. Notwithstanding the provisions of this Stipulation,
HHC reserves the right to implement, change, or
otherwise alter or amend the procedures and
requirements of this Stipulation if required by
intervening changes in federal statute or regulation or
State statute or regulation which are inconsistent with
the terms of this Stipulation. HHC shall provide
counsel for plaintiffs with written notification, by

facsimile or electronic mail with acknowledgment or
receipt, of a required change at least 30 days prior
the commencement of implementation, unless HHC is
required to commence implementation of such a required
change in less than thirty (30) days. If HHC is
required to commence implementation of a required
change in less than thirty (30) days, HHC shall provide
such notice no later than seven (7) working days after
learning thereof. Plaintiffs shall have the right to
challenge whether the change is required by federal or
State statute or regulations. Notwithstanding the above, HHC
shall not be precluded from relying on a change in federal
statute or regulation or State statute as the basis for defending
against a motion to modify and/or extend the terms of this
Stipulation

17. The City of New York further agrees to pay
reasonable attorneys' fees incurred in connection with
litigating plaintiffs' claims against HHC. Plaintiffs'
counsel shall provide counsel for HHC with all time
records supporting plaintiff's claim for attorneys'
fees, and the parties shall attempt to resolve this
issue through good faith negotiations. If the parties
are unable to reach agreement on the amount of
attorney's fees, plaintiffs may move in Court for
reasonable attorneys' fees incurred in connection with
litigating plaintiffs' federal claims against HHC, HHC
may oppose the amount of fees sought in plaintiff's
motion, and the Court shall decide the motion.

18. Notwithstanding the use of terms such as "approved"
or "so ordered," the terms and conditions of this
Stipulation shall be deemed effective, and the parties'
obligations, rights and responsibilities shall
commence, only when the Court's approval of this
Stipulation in accordance with Rule 23(e) of the
Federal Rules of Civil Procedure is final by appeal.

19. This Stipulation is final and binding upon
plaintiffs and HHC, their successors and assigns.


Plaintiffs have also provided a copy of the proposed

settlement agreement and the proposed notice.  The proposed

notice reads as follows:

A class action lawsuit has been filed on behalf of all individuals in the counties of Kings, Queens and Richmond who are subject to civil commitment evaluations at New York City Health and Hospital Corporation ("HHC") hospitals, and also on behalf of the Mental Disability Law Clinic, Touro Law Center, which represents individuals facing involuntary hospitalization. The lawsuit challenges the way that HHC doctors examine patients to determine whether or not they should be hospitalized against their will. The lawsuit asserts that doctors do not really look at whether a patient is dangerous and will hospitalize patients who have a mental illness against their will when they are not dangerous, in order to treat them.

A settlement has been reached in this lawsuit. The settlement provides that doctors will receive training about how to examine whether or not a patient is dangerous. The settlement will also require doctors to look at specific items to help determine whether or not a patient is dangerous.

If you have any questions about this lawsuit or the settlement you can contact one of the lawyers working for the plaintiff: William Brooks, telephone number (631) 421-2244, extension 331.

A hearing will be held before the Honorable Charles P. Sifton on (*date*). It will be held at the United States Courthouse at 225 Cadman Plaza East, Brooklyn, NY 11201, courtroom (*number of courtroom*). The purpose of this hearing is to determine whether or not the settlement is fair and the court should approve the settlement. If you do not approve of the settlement you can appear on the date and time of the settlement hearing to state your objections to the court. You may also submit objections to Judge Sifton in writing on or before the hearing date.

The parties propose that HHC post the notice in English and Spanish in the psychiatric emergency rooms and admission units of the HHC facilities covered by this lawsuit. The parties also agree that HHC shall publish the notice in a quarter page

advertisement in both English and Spanish in the Daily News and
El Diaro.

**DISCUSSION**

<u>Preliminary Approval of Settlement</u>

Preliminary approval of a proposed settlement is appropriate
where it is the result of serious, informed, and non-collusive
negotiations, where there are no grounds to doubt its fairness
and no other obvious deficiencies (such as unduly preferential
treatment of class representatives or of segments of the class,
or excessive compensation for attorneys), and where the
settlement appears to fall within the range of possible approval.
*Manual for Complex Litigation* § 30.41; *In re Medical X-Ray Film
Antitrust Litigation*, 1997 WL 33320580, *6 (E.D.N.Y. 1997).

The proposed settlement does not appear to be collusive,
given the lengthy and comprehensive negotiations surrounding it,
and plaintiffs' attorney fees will be negotiated and determined
by the parties at a later date. There is no monetary recovery at
issue here; hence there is virtually no potential for the named
plaintiffs to benefit from the settlement at the expense of the
interests of the rest of the class.

In terms of the overall fairness, adequacy, and
reasonableness of the settlement, a full fairness analysis is
unnecessary at this stage; preliminary approval is appropriate
where a proposed settlement is merely within the range of

possible approval. I note, however, that the factors to be considered in such an analysis include: (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Clearly, some of these factors, particularly the reaction of the class to the settlement, are impossible to weigh prior to notice and a hearing.

At this stage, brief consideration of these factors leads to the conclusion that the proposed relief awarded to class members under the settlement is within the range of possible approval. Plaintiffs contend that litigation on these claims would be complex and would require the plaintiffs to prove that HHC physicians make pretexutal assessments of dangerousness and that HHC confines non-dangerous individuals. Plaintiffs further content that proof would require the introduction of expert

testimony. I have little doubt that continued litigation of these claims would require the needless expenditure of resources in light of the settlement substantially providing for all that plaintiff demanded. The litigation has been pending for nearly eight years. Motions to dismiss and for class certification have been litigated and the parties have undergone substantial discovery. The plaintiffs therefore likely have adequate information to determine the adequacy of the settlement. Settlement obviates the risk that plaintiffs might be unable to prove that defendant's practices violate their right to due process. As regards the defendants' ability to withstand greater judgment, the risks of establishing damages and the reasonableness of the settlement fund, are not relevant in this case because plaintiffs seek no monetary damages. I note, that settlement on a suit which seeks only injunctive or declaratory relief does not bar individual members from brining subsequent claims for damages. Thus, considering these factors and the fact that the legal protections conferred on the class by the settlement correspond closely with the relief sought in the complaint and the equitable relief they sought and would likely have received had they been successful at trial, I make a preliminary determination that the settlement is fair.

Placement of Notice

Notice of compromise is mandatory in all class actions under

Federal Rule of Civil Procedure 23.  7B WRIGHT ET AL., FEDERAL
PRACTICE AND PROCEDURE §1797, at 365 (2d ed. 1986).  That notice must
be given in "a reasonable manner" as the court directs.  FED. R.
CIV. PRO. 23(e)(1)(B).  Where class members cannot be given
individual notice, posting of notice in locations necessarily or
likely frequented by the class members is sufficient. *Marisol A.
ex rel. Forbes v. Giuliani,* 185 F.R.D. 152, 160 (S.D.N.Y. 1999)
(Notice to plaintiff class of children in foster care was
sufficient where notice was posted in foster care housing
facilities, hospitals, family courts and a  "host of facilities
where children in the [plaintiff] class are routinely present.")
*Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988)(posting of
proposed settlement in common areas of prison facility sufficient
to provide notice to persons who are or will be confined within
the facility).

I find that posting notices in locations within every
emergency room and admission unit of every Health and Hospital
Corporation facility covered by this lawsuit will reasonably
guarantee that all individuals evaluated for commitment will
provide reasonable notice to class members. The claim pertains to
the procedures and standards by which individuals are evaluated
for civil commitment. Members of the class will therefore pass
through the HHC Emergency room or admission unit and have an
opportunity to view the notices posted therein.

The parties have not addressed notice to those potential
class members who were previously improperly evaluated for civil
commitment. If these individuals can be easily identified, for
example, through hospital records, they must be given individual
notice. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156
(1974)(interpreting former Rule 23(c)(2) to require that
individual notice be sent to all class members where they are
identifiable); *Mullane v. Central Hanover Bank & Trust Co.*, 339
U.S. 306 (1950)(notice by publication violates due process where
names and addresses are known). Accordingly, the parties are
directed either to identify and notify each potential class
member who was previously improperly evaluated for civil
commitment or to file an affidavit explaining why the identities
and addresses of these individuals cannot be easily ascertained.
If these individuals names and addresses cannot be easily
ascertained then notice by publication in both Spanish and
English newspapers will suffice.

<u>Content of Notice</u>

Although no rigid standards govern the content of the
notice, the form of notice must fairly apprise the prospective
members of the class of the pendency of the class action, the
terms of the proposed settlement, and the options that are open
to them in connection with the proceedings, including the option

to withdraw from the settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 70-71 (2d Cir. 1982). Notices frequently identify a response period by the end of which class members must opt out. *See e.g., Id.* at 70-71.

I find that, with minor modification, the proposed notice meets these standards. Those modifications are as follows: First, the notice should indicate that class members will be bound by the settlement. Second, the notice should indicate that the lawsuit does not provide damages to any individual who may have had his or her rights violated, but only aims to correct an alleged practice that plaintiff's believe is unlawful. Third, the notice should specify that individuals who wish to opt-out or object may do so in writing, prior to the hearing date, by mailing an objection to the Clerk of the United States District Court, Cadman Plaza East, Brooklyn, NY 11201." Any objection must state that it is an "objection to the proposed settlement" and must contain the case name, "Monaco v. Stone" and the docket number, "98-CV-2286."

## CONCLUSION

For the reasons set forth above, the settlement is preliminarily approved. The parties are directed to publish and mail notice of the settlement pursuant to the terms set forth in the accompanying order. Objections, requests for exclusion, and a

-19-

fairness hearing will also be conducted in accordance with the

accompanying order.

SO ORDERED.

Dated : Brooklyn, New York
        June 1, 2006


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge