UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Gregory B. Monaco, *etc.*, *et ano.*,

                    Plaintiffs,                    CV-98-3386 (CPS)


         - against -                               MEMORANDUM
                                                   OPINION AND
                                                   ORDER

Sharon Carpinello, *etc., et alia*,

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

        Plaintiffs Gregory B. Monaco, on behalf of himself and
similarly situated individuals facing civil commitment, and the
Mental Disability Law Clinic of Touro Law Center ("the Clinic")
bring this class action for declaratory and injunctive relief
against the following defendants: Sharon Carpinello, in her
official capacity as Acting Commissioner of the New York State
Office of Mental Health ("OMH"); Catherine Cahill, in her
official capacity as Justice of the East Hampton Town Justice
Court, on behalf of herself and all other local criminal court
judges in New York State; Benjamin Chu, in his official capacity
as the Director of the New York City Health and Hospitals
Corporation ("HHC"); Mark Sedler, in his official capacity as
Chairman of the Department of Psychiatry at University Hospital
of the State University at Stony Brook; Kenneth Skodnek, in his
official capacity as Chairman of Psychiatry at Nassau University

Medical Center ("NUMC"); Arnold Licht, in his official capacity as Director of the psychiatric unit of Long Island College Hospital; Alfred Tisch, in his official capacity of Sheriff of Suffolk County; and Martin Horn, in his official capacity of Commissioner of the New York City Department of Corrections.[1]

Plaintiffs allege violations of the Fourth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983, as well as state law claims for false imprisonment negligence, and medical malpractice. As amended, the complaint contains two major components: 1) a challenge to the constitutionality of the practices of Cahill, Horn, and Tisch in unnecessarily keeping confined individuals found incompetent to stand trial for minor felonies and misdemeanors and those awaiting such a determination; 2) a challenge to the constitutionality of the procedures used by Chu, Sedler, Skodnek, and Licht to involuntarily hospitalize individuals deemed mentally ill.

Previously, I found it appropriate to certify a plaintiff subclass of all individuals in the counties of Kings, Queens, Richmond, Nassau, and Suffolk who are subject to civil commitment

---

[1] In a previous decision, this Court dismissed the claims against Licht and granted summary judgment in favor of four other defendants. In their fifth amended complaint, plaintiffs reasserted these claims against these defendants in order to preserve their right to appeal this Court's judgment. *See* 6 WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476 at 560 (2d ed. 1990).

evaluations at facilities operated by the Office of Mental Health or other state entities and local governments (the "Civil Commitment Subclass").[2]

On June 1, 2006 I granted preliminary approval to the proposed settlement between members of the Civil Commitment Subclass who are subject to civil commitment evaluations at facilities operated by the New York City Health and Hospital Corporation and Allan Aviles, as president of the New York City Health and Hospital Corporation (successor to defendant Chu). I also approved the proposed notice, with some modifications. I subsequently approved notice by publication on November 22, 2006 (as amended by my order of December 12, 2006). A fairness hearing was held February 26, 2007, prior to which defendants submitted an affidavit attesting to the fact that they materially complied with this Court's instructions regarding notice.[3] There have been no objections to the proposed settlement. The Court now considers final approval of the proposed class action settlement agreement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. For the reasons that follow, final approval

---

[2] I have also certified an "Incompetency Subclass," consisting of all individuals who have been or will be: (1) charged with a minor felony or misdemeanor; (2) evaluated to determine whether they are competent to stand trial; and (3) found by court appointed psychiatrists to lack the capacity to stand trial, and awaiting a determination of the competency issue by the local criminal court, as well as two subclasses of that Incompetency Subclass. Those classes are not parties to this settlement.

[3] The publication of notice in the Daily News was four days later than ordered by the Court, apparently not due to any fault of the parties.

is granted.

## BACKGROUND

The relevant claims for relief read as follows:

Seventh Cause of Action:

As a result of physicians at OMH and HHC operated facilities, Stony Brook and NUMC certifying individuals who have been evaluated for civil commitment purposes as dangerous because the physician believe that such individuals' clinical condition warrants in-patient care and treatment, defendants Carpinello, Chu, Skodnek, Sedler, and Licht are responsible for the confinement of non-dangerous individuals, which violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

Eighth Cause of Action:

By failing to examine and employ significant criteria related to the likelihood of causing harm when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony Brook and NUMC make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individuals, both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

Ninth Cause of Action:

By conducting clinical evaluations that frequently do not last more than five or ten minutes when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony brook, and NUMC make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individual [sic], both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

Tenth cause of Action:

By failing to apply the statutory criteria of the
provisions of the New York Mental Hygiene Law pursuant
to which the physicians act, physicians at HHC operated
facilities, Stony Brook, and NUMC violated the
procedural component of the Due Process Clause of the
Fourteenth Amendment to the United States Constitution
and 42 U.S.C. §1983.

The plaintiffs and Aviles (successor to defendant Chu) have

agreed to settle these claims for relief. Plaintiffs have

provided a copy of the proposed settlement. It reads as follows:

Definitions:
1. For the purposes of this Stipulation, "psychiatric
emergency staff" refers to any physician assigned to
the psychiatric emergency service at HHC who is
authorized to involuntarily admit patients to HHC
psychiatric units pursuant to article 9 of the New York
Mental Hygiene Law.

Risk Assessment Form
2. HHC agrees to require psychiatric emergency staff to
use a standard form to evaluate patients for
involuntary civil commitment to any HHC facility. This
form shall require psychiatric emergency staff to
document any risk factors for danger to self or others.

3. The parties agree that the Psychiatric Emergency
Department Assessment From annexed hereto as Exhibit A
satisfies the requirements of paragraph 2 above. HHC
may revise this form, except that any revised form must
require psychiatric emergency staff to document any
risk factors for danger to self or others, and
revisions may only be made after 30 days advance notice
to plaintiff's counsel.

Training
4. HHC agrees to provide training for all current
psychiatric emergency staff, and all new psychiatric
emergency staff who begin working at psychiatric
emergency services in HHC hospitals during the term of
this Stipulation, on the following topics: a) the legal
standards for involuntary civil commitment pursuant to

Article 9 of the New York Mental Hygiene Law; b) risk
factors relevant to evaluating whether a patient is
dangerous to self or others; c) use of the HHC form
described in paragraph 2 above; and d) the legal
requirements for involuntary medication of patients.
The training materials will convey that involuntary
civil commitment decisions are legal determinations as
well as clinical determinations. The training materials
concerning involuntary medication will instruct staff
to write involuntary medication orders consistent with
the requirements of 14 N.Y.C.R.R. 527.8(c)(1), and will
further instruct staff not to write medication orders
that authorize the intramuscular administration of
psychotropic medication on a "PRN" basis for agitation
alone.[4] This training shall be completed within 150
days of the date when this Stipulation is "so ordered"
by the Court. HHC will provide plaintiffs' counsel with
a copy of the final training materials that are
described in this paragraph.

5. HHC agrees to provide additional in-person training
for HHC hospital personnel responsible for direct
supervision of psychiatric emergency staff, concerning
their obligation to ensure that psychiatric emergency
staff comply with Article 9 of the Mental Hygiene Law
when making involuntary commitment decisions. This
training shall be completed within 150 days of the date
when this Stipulation is "so ordered" by the Court.

Monitoring
6. Three times during the term of this Stipulation, HHC
will provide plaintiffs' counsel with copies of
commitment certificates, and the form described in
paragraph 2 above, for a systematically selected sample
of 25 patients involuntarily committed during the

---

[4] The forcible administration of medicine was not addressed in the
complaint in this case. Plaintiff explains it requested access to HHC
facilities in order to offer patient's legal services in connection with any
wrongful determination of dangerousness. In this Court's December 20, 2002
Memorandum Opinion and Order the Court granted plaintiffs right of access.
However, that decision was stayed pursuant to defendants' Rule 23(f)
application to the Second Circuit. Accordingly, the Law Center filed a new
suit entitled *Mental Disability Law Clinic v. Marcos*, 02-CV-6131, in which the
Law Clinic sought access both to offer legal services in connection with any
wrongful determination of dangerousness and in connection with any wrongful
forcible medication of patients. Thereafter, the Second Circuit denied the
defendants' application pursuant to 23(f). That action will be discontinued
by the settlement under consideration.

previous three-month period, in the psychiatric
emergency department at each of the following
facilities: Bellevue Hospital Center, Kings County
Hospital Center, and Elmhurst Hospital Center (for a
combined total of 75 patients). The names and other
personally identifiable information concerning
individual patients and their family members and
individual HHC staff members will be redacted from the
files, and the files will not be disclosed by
plaintiffs' counsel to any party other than the Court.
If any such documents are filed with the Court for any
reason they shall be filed under seal. These documents
will provided at the end of the ninth month, fifteenth
month and twenty-second month after this Stipulation is
"so ordered" by the Court.

7. HHC and plaintiffs' counsel shall review the
documents provided pursuant to paragraph 6 above within
30 days of the date when the documents are produced.
The purpose of this review will be to ensure that
psychiatrists are appropriately using the form
described in paragraph 2 above to assist them in making
commitment determination. The parties agree that this
review will <u>not</u> involve formally challenging in Court
the propriety of involuntary commitment decisions that
were made in individual cases.

8. After the parties complete each review described in
paragraph 7 above, plaintiffs' counsel may request a
meeting with HHC to discuss the results of the review.
When plaintiffs' counsel requests such a meeting,
plaintiffs' counsel shall send HHC's counsel a written
summary of the issues that plaintiffs' counsel would
like to discuss at the meeting. The meeting shall take
place a reasonable time after HHC's counsel receives
the written summary. For defendants, any such meeting
would be attended by one or more attorneys from the
Office of the Corporation Counsel; one or more
attorneys from HHC's Office of Legal Affairs; and at
least one supervisory or managerial staff member at HHC
who: a) is involved in training or supervising
psychiatric emergency staff at Bellevue Hospital
Center, Kings County Hospital Center, or Elmhurst
Hospital Center; b) works in a managerial position at
HHC's central office in the Office of Behavioral Health
or any successor office that is involved in
implementing settlement; or c) is involved in
corporate-wide training relating to this settlement. At

any such meeting, the parties would discuss the results of the review, including whether any corrective action may be appropriate. On consent of plaintiffs and HHC, any such meeting could take place at the Courthouse and involve the Magistrate Judge assigned to this case, on a date convenient for the Court.

Jurisdiction

9. This Court shall retain jurisdiction over this Stipulation for the purposes of modification and enforcement until two years after the date on which it is "so ordered" by the Court. At the end of that time, the Court's jurisdiction shall end, the terms of this Stipulation shall expire, and all claims in this action against HHC shall be dismissed with prejudice. Nothing in this paragraph shall be construed as a limitation on plaintiff's right to move to enforce the stipulation in accordance with ¶¶ 12 and 13 of this Stipulation, or of the parties' right to negotiate an extension of the agreement on consent of all parties to the Stipulation.

10. During the time when this Stipulation is in effect, plaintiffs agree not to file any new litigation seeking systemic relief against HHC or any of its hospitals pertaining to the subject matter of this action. Nothing in this Stipulation shall be construed as precluding any party from bringing an action or proceeding seeking systemic relief against HHC or any of its hospitals concerning the issue of involuntary medication at HHC. Plaintiff Mental Disability Law Clinic agrees that, if it is contemplating commencing any such action, it will provide counsel for HHC with at least 60 days prior notice concerning the contemplated action. Nothing in this Stipulation shall be construed as preventing plaintiff Mental Disability Law Clinic from filing a new action against HHC for systemic declaratory, injunctive or other equitable relief based on any claims arising after the expiration of the terms of this stipulation.

11. Plaintiffs shall discontinue with prejudice the action pending in this Court titled <u>Mental Disability Law Clinic v. Marcos</u>, 02-CV-6131 (CPS). A copy of the stipulation of discontinuance that shall be filed with the Court is attached as Exhibit B.

Enforcement

12. During the term of this Stipulation, plaintiffs may

move to enforce Stipulation only if plaintiffs have evidence that HHC has a) substantially failed to require psychiatric emergency staff to use the form described in paragraph 2 above; b) substantially failed to complete the training required by paragraphs 4 and 5 above; or c) substantially failed to provide the documents, complete the review, or participate in the meetings described in paragraphs 6 through 8 above. Should plaintiffs move to enforce the Stipulation, defendants shall be considered to be in compliance with the Stipulation unless plaintiffs establish that defendants have substantially failed to comply with these requirements. Non-systemic violations of these requirements shall not form a basis for a motion for enforcement or a finding of non-compliance. In the event the Court finds that HHC has substantially failed to comply with any of these requirements, it may grant relief that is appropriate to cure such non-compliance. Any such relief shall be narrowly drawn, and extend no farther than necessary to cure the non-compliance.

13. At least sixty (60) days prior to making any motion to enforce this Stipulation pursuant to paragraph 12 or this Stipulation, plaintiffs shall provide HHC with written notice of the nature, specifics and evidence of the claimed violation(s) of the Stipulation in order to give HHC an opportunity to cure such alleged violation(s). The parties shall thereafter attempt to resolve the allegation(s) of non-compliance within sixty (60) days of plaintiffs' counsel providing written notice consistent with the terms of this paragraph, plaintiffs may filed a motion in accordance with paragraph 9 of this Stipulation.

General Provisions

14. Nothing contained herein shall be deemed to be an admission by HHC or the City of New York of liability or the truth of any of the allegations set forth in the complaint, or that they have in any manner or way violated plaintiffs' rights, or the rights of any other person or entity, as defined in the constitutions, statutes, ordinances, rules or regulations of the United States, the State of New York, the City of New York, or any other rules, regulations or bylaws of any department or subdivision thereof.

15. This Stipulation is solely for the purposes of settlement, and does not reflect the positions of the

parties in any other judicial or administrative action or proceeding. This Stipulation shall not be admissible in, nor is it related to, any other judicial or administrative action or proceeding or settlement negotiations, except that any party may use this Stipulation in connection with any subsequent action or proceeding brought o enforce this Stipulation.

16. Notwithstanding the provisions of this Stipulation, HHC reserves the right to implement, change, or otherwise alter or amend the procedures and requirements of this Stipulation if required by intervening changes in federal statute or regulation or State statute or regulation which are inconsistent with the terms of this Stipulation. HHC shall provide counsel for plaintiffs with written notification, by facsimile or electronic mail with acknowledgment or receipt, of a required change at least 30 days prior the commencement of implementation, unless HHC is required to commence implementation of such a required change in less than thirty (30) days. If HHC is required to commence implementation of a required change in less than thirty (30) days, HHC shall provide such notice no later than seven (7) working days after learning thereof. Plaintiffs shall have the right to challenge whether the change is required by federal or State statute or regulations. Notwithstanding the above, HHC shall not be precluded from relying on a change in federal statute or regulation or State statute as the basis for defending against a motion to modify and/or extend the terms of this Stipulation

17. The City of New York further agrees to pay reasonable attorneys' fees incurred in connection with litigating plaintiffs' claims against HHC. Plaintiffs' counsel shall provide counsel for HHC with all time records supporting plaintiff's claim for attorneys' fees, and the parties shall attempt to resolve this issue through good faith negotiations. If the parties are unable to reach agreement on the amount of attorney's fees, plaintiffs may move in Court for reasonable attorneys' fees incurred in connection with litigating plaintiffs' federal claims against HHC, HHC may oppose the amount of fees sought in plaintiff's motion, and the Court shall decide the motion.

18. Notwithstanding the use of terms such as
"approved" or "so ordered," the terms and
conditions of this Stipulation shall be deemed
effective, and the parties' obligations, rights
and responsibilities shall commence, only when the
Court's approval of this Stipulation in accordance
with Rule 23(e) of the Federal Rules of Civil
Procedure is final by appeal.

19. This Stipulation is final and binding upon
plaintiffs and HHC, their successors and assigns.


Plaintiffs have also provided a copy of the notice,

published pursuant to the Court's preliminary approval

order.

A class action lawsuit has been filed on behalf of
all individuals in the counties of Kings, Queens
and Richmond who are subject to civil commitment
evaluations at New York City Health and Hospital
Corporation ("HHC") hospitals, and also on behalf
of the Mental Disability Law Clinic, Touro Law
Center, which represents individuals facing
involuntary hospitalization. The lawsuit
challenges the way that HHC doctors examine
patients to determine whether or not they should
be hospitalized against their will. The lawsuit
asserts that doctors do not really look at whether
a patient is dangerous and will hospitalize
patients who have a mental illness against their
will when they are not dangerous, in order to
treat them.

A settlement has been reached in this lawsuit. The
settlement provides that doctors will receive
training about how to examine whether or not a
patient is dangerous. The settlement will also
require doctors to look at specific items to help
determine whether or not a patient is dangerous.

If you have any questions about this lawsuit or
the settlement you can contact one of the lawyers
working for the plaintiff: William Brooks,
telephone number (631) 421-2244, extension 331.

A hearing will be held before the Honorable
Charles P. Sifton on [February 26, 2007]. It will
be held at the United States Courthouse at 225
Cadman Plaza East, Brooklyn, NY 11201, courtroom
[6A]. The purpose of this hearing is to determine
whether or not the settlement is fair and the
court should approve the settlement. If you do not
approve of the settlement you can appear on the
date and time of the settlement hearing to state
your objections to the court. You may also submit
objections to Judge Sifton in writing on or before
the hearing date.

The parties posted notice in English and Spanish in the
psychiatric emergency rooms and admission units of the HHC
facilities covered by this lawsuit.  The parties also
published the notice in the Daily News, El Diaro, Salud
Mental (the Spanish language edition of Mental Health News)
and New York City Voices.

## DISCUSSION

Under Rule 23(e) of the Federal Rules of Civil
Procedure, class actions "shall not be dismissed or
compromised without the approval of the court, and notice of
the proposed dismissal or compromise shall be given to all
members of the class in such manner as the court directs."
Fed. R. Civ. P. 23(e).

"The central question raised by [a] proposed settlement
of a class action is whether the compromise is fair,
reasonable, and adequate." *Weinberger v. Kendrick*, 698 F.2d
61, 73 (2d Cir. 1982).  To determine whether this standard

has been met, the court must "compare the terms of the compromise with the likely rewards of litigation." *In re Warner Communications Securities Litigation*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985)(citations omitted).  In evaluating the substantive fairness of a proposed settlement, the Court is guided by the nine factors initially enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001) (citations omitted); *see also In re Gulf Oil/Cities Service Tender Offer Litigation*, 142 F.R.D. 588, 590 (S.D.N.Y. 1992)(applying *Grinnell* factors); *In re Warner Communications*, 618 F. Supp. at 740-741(same).  The court must also examine the negotiating process that gave rise to the settlement to determine if it was achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests. *See*

*id.* at 741; *see also D'Amato*, 236 F.3d at 85 ("The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms.").

*1) Complexity, Expense and Likely Duration of the Litigation*

These claims would be complex to litigate and would require the plaintiffs to prove that HHC physicians make pretextual assessments of dangerousness and that HHC confines non-dangerous individuals.  Proof would require the introduction of expert testimony.  As I stated upon granting preliminary approval, I have little doubt that continued litigation of these claims would require the needless expenditure of resources in light of a settlement providing for substantially all that plaintiff demanded.  Accordingly, this factor weighs in favor of settlement.

*2) Reaction of the Class*

The legal protections conferred on the class by the settlement correspond closely with the relief sought in the complaint and the equitable relief they sought and would likely have received had they been successful at trial.  No class member has objected to this settlement.  Moreover, the settlement on a suit which seeks only injunctive or

declaratory relief does not bar individual members from bringing subsequent claims for damages. This factor therefore weighs in favor of settlement.

*3) Stage of the Proceedings*

The stage of the proceedings and the amount of discovery the parties have conducted is "relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness." *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y., 1997). Because this litigation has been pending for eight years, motions to dismiss and for class certification have been litigated and the parties have undergone substantial discovery, this factor weighs in favor of settlement.

4) *Risks of Establishing Liability*

"In assessing the adequacy of a settlement, a court must balance the benefits of a certain and immediate [relief] against the inherent risks of litigation." *In re Medical X-Ray*, 1998 U.S. Dist. LEXIS 14888, at *11 (E.D.N.Y. 1998). Since the settlement gives the plaintiffs substantially the relief which they would have received if

they were successful at trial while obviating the risk that plaintiffs might be unable to prove that defendant's practices violate their right to due process, this factor weighs in favor of settlement.

*5) Risks of Establishing Damages*

This factor is not relevant in this case since plaintiffs seek no monetary damages.

*6) Risks of Maintaining the Class Action through the Trial*

Having previously approved the class, I see no reason why it would not be maintained through trial.  Accordingly, this factor weighs against settlement.

*7) Ability of Defendants to Withstand Greater Judgement*

This factor is not relevant in this case since plaintiffs seek no monetary damages.  Nor does it appear likely that the administrative costs of complying with the settlement will substantially exceed the costs of further litigation.

*8) Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery*

This factor is not relevant in this case since

plaintiffs seek no monetary damages.

9) *Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of all the Attendant Risks of Litigation*

This factor is not relevant in this case since plaintiffs seek no monetary damages.

10) *Arms Length Negotiations*

In the Preliminary Approval Order, I concluded that the Settlement Agreement was both substantively and procedurally fair.  The parties litigated motions to dismiss and for class certification and engaged in lengthy and comprehensive negotiations surrounding this settlement.  Plaintiffs' attorney fees will be negotiated and determined by the Court if necessary at later date.  There is no monetary recovery at issue here and therefore no reason to suppose that the named plaintiffs to benefit from the settlement at the expense of the interests of the rest of the class.  There appears to be no collusion and I conclude that the negotiations were conducted at "arms-length."

Since nearly all the relevant factors weigh in favor of settlement and the settlement substantially conforms with the relief plaintiffs could have been awarded after trial, I

find that the settlement is fair, reasonable, and adequate.

## Conclusion

For the reasons set forth above, the settlement is approved. The Clerk is directed to transmit a copy of the within to all parties.


SO ORDERED.

Dated :  Brooklyn, New York
         April 19, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                              United States District Judge