UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - -X
GREGORY B. MONACO, on behalf of himself
and other similarly situated
individuals, MENTAL DISABILITY LAW
CLINIC, TOURO LAW CENTER, on behalf
of itself and individuals facing
civil commitment and mentally ill
individuals charged with minor felonies
and misdemeanors,

                    Plaintiffs,

       -against-

SHARON CARPINELLO, R.N., Ph.D.
in her official capacity as Acting
Commissioner of the New York
State Office of Mental Health,
CATHERINE CAHILL, in her official
capacity as Justice of the East
Hampton, Town Justice Court,
on behalf of herself and all other
local criminal court judges in
New York State, BENJAMIN CHU, in
his official capacity as the Director
of the New York City Health and Hospitals
Corporation, MARC SEDLER, M.D.,
in his official capacity as
Chairman of the Department of Psychiatry at
University Hospital of the State
University of New York at Stony Brook,
KENNETH SKODNEK, M.D., in his official
capacity as  Chairman of Psychiatry
at Nassau University Medical Center, ARNOLD
LICHT, in his official capacity as Director of the
psychiatric unit of Long Island College
Hospital, ALFRED TISCH, in his official capacity
as Sheriff of Suffolk County, MARTIN HORN,
in his official capacity as Commissioner of
the New York City Department of Corrections,
WILLIAM  PACKARD, M.D., personally, S. SARWAL,
M.D., personally, B. PALMA-ACQUINO, M.D.,
personally, S. TUZEL, M.D., personally,
R. DAVE, M.D., personally,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - -X

FIFTH AMENDED
  COMPLAINT -
CLASS ACTION

CV-98-3386
  (CPS)

PRELIMINARY STATEMENT

1.    This plaintiff and defendant class action for
declaratory and injunctive relief that challenges practices
pursuant to which individuals deemed mentally ill are
involuntarily hospitalized.  First, this lawsuit challenges
the practices to which individuals found incompetent to
stand trial to minor felonies and misdemeanors in New York
State are subject.  This lawsuit also challenges the manner
in which hospital physicians conduct psychiatric evaluations
of individuals deemed mentally ill, some of whom have been
found incompetent to stand trial to minor felonies and
misdemeanors.  This lawsuit also contains individual claims
for damages for the named individual plaintiff.

Class-Wide Injunctive Aspect of Lawsuit

2.    The plaintiff challenges numerous practices to
which allegedly mentally ill individuals who have been
charged with minor felonies and misdemeanors are subject.
First, this lawsuit challenges the unnecessary confinement
in jail to which incompetent defendants throughout the state
in general, and in Suffolk County and New York City in
particular, are subject.  While the New York State court
system has the capacity to determine a defendant's capacity
to stand trial in one week, a determination of a defendant's
competence can take as long as one month.  During this time,
a defendant, who has been charged with a minor misdemeanor,
is often required to sit in jail.

2

3.   Second, when a local criminal court determines that a defendant in a misdemeanor or minor felony case lacks the capacity to stand trial, the court will commit the defendant, pursuant to CPL § 730.40, to a facility operated by the New York State Office of Mental Health ("OMH") or the New York State Office and Mental Retardation and Developmental Disabilities ("OMRDD").  However, because (1) OMH has not designated a facility by the time a court has ordered the commitment pursuant to CPL § 730.40 and agencies responsible for the transport of incompetent defendants from jail to an OMH facilities, including the New York City Department of Corrections and the Suffolk County Sheriff, do not promptly transport incompetent defendants, many defendants remain in jail for impermissibly long periods of time.

4.   Once incompetent defendants are remanded, OMH facilities continue to subject these individuals to statutes and regulations that violate the Equal Protection Clause of the Fourteenth Amendment and which have been previously declared unconstitutional in Ritter v. Surles, 144 Misc. 2d 945 (Sup. Ct. Westchester Cty. 1988). Specifically, OMH continues to subject incompetent defendants to the provisions of New York Criminal Procedure Law ("CPL") §730.60, Mental Hygiene Law ("MHL") § 29.11(h) and 14 NYCRR Part 540.  These provisions authorize procedures for the care, treatment, and discharge of patients that are more

3

stringent than those applicable to civilly committed patients.

5.   In addition, once remanded to OMH facilities, incompetent defendants are further subjected to additional unconstitutional practices.  Presently, it is the OMH practice to detain and evaluate and incompetent defendants remanded pursuant to CPL § 730.40 for a period not to exceed seventy-two hours.  At this time, OMH will either civilly commit the defendants or release them.  The federal Constitution prohibits the confinement of nondangerous mentally ill individuals.  Hence, in order to continue to confine an individual admitted and initially confined pursuant to CPL § 730.40, OMH clinicians must certify that such individual is dangerous.

6.   However, many decisions to civilly commit allegedly mentally ill individuals, including incompetent defendants, are made because a physician believes that the person evaluated requires either in-patient care and treatment or further evaluation and not because the individual is dangerous.  In other words, physicians at hospitals operated by OMH certify individuals as dangerous as a pretext so that the physicians can continue to provide care and treatment that they deem warranted.

7.   Furthermore, the relevant clinical criteria for assessing dangerousness are distinct from the criteria for assessing mental illness.  OMH has have not adequately

4

trained physicians in the area of the assessment of danger. Accordingly, OMH clinicians do not adequately assess dangerousness and violate the Due Process Clause because they engage in assessments of dangers that do not promise some degree of accuracy.

8.    However, the problems of pretextual psychiatric evaluations and lack of training relating to dangerousness assessment do not exist in only OMH facilities.  Rather, this problem exists in all facilities that have the authority to civilly commit allegedly mentally ill individuals under the New York Mental Hygiene Law. Accordingly, in regard to this aspect of this lawsuit, the plaintiff sought to certify a defendant class of all hospitals licensed by OMH located in the Eastern District of New York.  However, in a Memorandum and Order dated December 18, 2002, this Court denied the plaintiffs' motion to certify a defendant class.

Individual Damages Claims

9.    In addition to class-wide claims for declaratory and injunctive relief, this lawsuit contains individual claims for damages on behalf of named plaintiff, Gregory Monaco.  Mr. Monaco asserts that he suffered a violation of his Eighth and Fourteenth Amendment rights, and his right under New York common law, when confined in the Suffolk County jail because a jail physician withheld medication that was necessary for his treatment.  The plaintiff further

5

asserts that physicians at Pilgrim Psychiatric Center violated his Fourteenth Amendment rights when they confined him when he was not dangerous.

## PARTIES

10. Plaintiff Gregory R. Monaco is an individual who, at the time this lawsuit was filed, was charged with misdemeanors and sitting in jail in Suffolk County. He was then admitted to Pilgrim Psychiatric Center pursuant to CPL § 730.40.

11. Plaintiff Mental Disability Law Clinic, is an office authorized by the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. 1080 et. seq. ("PAMII Act") to investigate incidents of abuse and neglect of individuals with mental illness and provide legal representation to institutionalized mentally ill individuals.

12. Defendant Sharon Carpinello, is the Acting Commissioner of OMH and, as such, has the ultimate responsibility for the care, treatment and management of individuals confined within psychiatric centers operated by OMH.

13. Defendant Catherine Cahill is a Justice of the Town Justice Court of East Hampton, and hence, is authorized to commit to OMH facilities defendants found incompetent to stand trial.

14. Defendant Benjamin Chu is the Executive Director

6

of the New York City Health and Hospitals Corporation (``HHC'') and as such is ultimately responsible for the operation and management of all facilities operated by HHC.

15. Defendant Arnold Licht is the present Director of the psychiatric unit of Long Island College Hospital (``LICH''), a facility licensed by OMH, and as such, is responsible for the operation and management of the psychiatric unit of the hospital.  In the Court's Memorandum and Order dated December 18, 2003, this Court dismissed the claims against defendant Licht.  The plaintiffs have named defendant Licht in this complaint for the sole purpose of not waiving their right to appeal this Court's Memorandum and Order when a final judgment is entered for the purpose of seeking reinstatement of the claims against defendant Licht.

16. Defendant Marc Sedler is the Chairman of the Department of Psychiatry at University Hospital of the State University of New York at Stony Brook (``Stony Brook'').  As such, he is ultimately responsible for the operation and management of the psychiatric unit at Stony Brook.

17. Defendant Kenneth Skodnek is the Chairman of the Deparment of Psychiatry of Nassau University Medical Center (``NUMC''), a facility formerly known as Nassau County Medical Center. As such, he is ultimately responsible for the operation and management of the psychiatric unit of NUMC.

18.   Defendant Alfred Tisch is the Sheriff of Suffolk County, and as such, is responsible for the transport from jail to an OMH facility of all mentally ill individuals in Suffolk County found incompetent to stand trial and remanded pursuant to CPL  § 730.40.

19.   Martin Horn is the Commissioner of the New York City Department of Corrections, and as such, is responsible for the transport from jail to an OMH facility of all mentally ill individuals in New York City found incompetent to stand trial and remanded pursuant to CPL  § 730.40.

20.   Defendant William Packard, M.D., is a physician employed at the Riverhead Correctional Facility, a/k/a, the Suffolk County jail.

21.   Defendants S. Sarwal, B. Palma-Acquino and S. Tuzel are physicians who at all relevant times were employed at Pilgrim Psychiatric Center.  These individuals certified the plaintiff for civil commitment pursuant to Mental Hygiene Law § 9.27.

22.   Defendant R. Dave, M.D., is a physician who was at all relevant times employed at Pilgrim Psychiatric Center.

23. In this Court's Memorandum and Order dated December 18, 2002, this Court dismissed the claims against defendants Sarwal, Palma-Acquino, Tuzel and Dave. The plaintiffs have named defendants Sarwal, Palma-Acquino, Tuzel and Dave in this complaint for the sole purpose of not waiving their right to appeal this Court's Memorandum and Order when a

8

final judgment is entered for the purpose of seeking reinstatement of the claims against defendants Sarwal, Palma-Acquino, Tuzel, and Dave.

## JURISDICTION AND VENUE

24.  Jurisdiction is conferred upon this court pursuant to the following statutes: (a) 28 U.S.C. §1331, which authorizes jurisdiction of civil actions arising under the Constitution, laws and treaties of the United States; and (b) 28 U.S.C. § 1343(3), which authorizes jurisdiction of civil actions arising under 42 U.S.C. § 1983.

25.  Venue is conferred upon this court pursuant to 28 U.S.C. § 1391, which authorizes the place of trial in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

26.  At the time he filed this lawsuit, plaintiff Gregory Monaco was confined in jail in East Hampton and was standing trial in a local criminal court in the Town of East Hampton, which is located in the Eastern District of New York.  All the events leading to up to this lawsuit occurred in this district.

CLASS ALLEGATIONS

Plaintiff Class

27. On March 12, 1999, this Court issued an order
certifying Gregory Monaco as the representative of a
plaintiff class of all individuals who have been or will be
(1) charged with a minor felony or misdemeanor, (2)
evaluated to determine whether or not they are competent to
stand trial, and (3) found by court appointed psychiatrists
to lack the capacity to stand trial, and awaiting a
determination of the competency issue by the local criminal
court. This Court also certified a subclass of all
individuals who have been or will be (1) charged with a
minor felony or misdemeanor, (2) evaluated to determine
whether or not they are competent to stand trial, and (3)
found by court appointed psychiatrists to lack the capacity
to stand trial, and (4) confined to a local jail pending a
determination of competency while awaiting a determination
of the competency issue by the local criminal court.

28. In this Court's memorandum and order dated December
18, 2002, this Court certified plaintiffs Greg Monaco and
Mental Disability Law Clinic as the representatives of a
subclass of all individuals who have been or will be (1)
charged with a minor felony or misdemeanor, (2) evaluated to
determine whether or not they are competent to stand trial,
(3) found by court appointed psychiatrists to lack the
capacity to sand trial, and awaiting a determination of the

10

competency issue by the local criminal court, and (4) if
remanded pursuant to Criminal Procedure Law § 730.40,
subject to a civil commitment evaluation pursuant to New
York Criminal Procedure Law article 9 (``incompetency
subclass'').

29. This Court further divided this incompetency
subclass into two sub-subclasses.  The first sub-subclass
consists of all individuals who have been or will be (1)
charged with a minor felony or misdemeanor, (2) evaluated to
determine whether or not they are competent to stand trial,
(3) found by court appointed psychiatrists to lack the
capacity to sand trial, and awaiting a determination of the
competency issue by the local criminal court, (4) if
remanded pursuant to Criminal Procedure Law § 730.40,
subject to a civil commitment evaluation pursuant to New
York Criminal Procedure Law article 9, and (5) have or will
be confined to a local jail while awaiting a  competency
determination from the court.

30. The second sub-subclass consists of all individuals
who have been or will be (1) charged with a minor felony or
misdemeanor, (2) evaluated to determine whether or not they
are competent to stand trial, (3) found by court appointed
psychiatrists to lack the capacity to sand trial, and
awaiting a determination of the competency issue by the
local criminal court, (4) if remanded pursuant to Criminal
Procedure Law § 730.40, subject to a civil commitment

11

evaluation pursuant to New York Criminal Procedure Law article 9, and (5) have or will be found (a) found by the court to be incompetent and (b) confined to a jail in New York City or Suffolk County while awaiting transport to a facility designated by OMH.

31. In addition, in its Memorandum and Order dated December 18, 2002, this certified plaintiff Mental Disability Law Clinic as the class representative of a civil commitment subclass.  In a Memorandum and Order dated November 17, 2003 this Court redefined the subclass to include all individuals in the counties of Kings, Queens, Richmond, Nassau and Suffolk who are subject to civil commitment evaluations pursuant to New York Mental Hygiene Law article 9 at facilities operated by OMH or other state entities and local governments.

Defendant Class

32.  On March 12, 1999 this Court issued an order certifying defendant Cahill as representative of a class of all local criminal court judges who have the authority to commit individuals pursuant to CPL § 730.40.

RELEVANT STATUTORY AND ADMINISTRATIVE SCHEMES

33.  After a defendant in New York State has been arraigned upon an accusatory instrument other than a felony complaint, a court must order a psychiatric evaluation if the court believes that the defendant may be incompetent to stand trial.  CPL § 730.30(1).

12

34.   Pursuant to CPL § 730.40, if in a local criminal court an accusatory instrument other than a felony complaint has been filed against an incapacitated defendant, and the defendant has been found to lack the capacity to stand trial, such court will issue a final order of observation committing such defendant to the custody of the Commissioner of the OMH or the Commissioner of the OMRDD for a period not to exceed ninety days.  If the incapacitated defendant has had a felony complaint filed against him, the court may, with the consent of the district attorney, issue a final order of observation.  CPL § 730.40(1).

35.  CPL § 730.40 does not require the local criminal court to make a finding that the incapacitated defendant constitutes a danger of physical harm to himself or others as a condition of issuing a final order of observation.

36.  When a local criminal court has issued final order of observation, it must dismiss the accusatory instrument filed in such court against the defendant and such dismissal constitutes a bar to any further prosecution of the charge or charges contained in such accusatory instrument.  CPL § 730.40(2).

37.  No person committed pursuant to CPL § 730.40 may be placed in a less restrictive setting without at least four days written notice to certain parties.  Such parties include the District Attorney of the county from which the defendant was committed, the superintendent of the state

13

police and any person whom the commissioners of OMH and
OMRDD determine might reasonably be expected to be the
victim of any assault or violent felony offense carried out
by the committed person.  CPL §730.60(6)(a); MHL § 29.11(h);
and 14 NYCRR § 540.10(a).

38.  Placement in a less restrictive setting includes
conversion of a patient to civil status, the granting of
furloughs, transfer to a less secure facility, discharge or
conditioned release.  See 14 NYCRR § 540.9.

39.  These requirements apply only to patients who have
been committed to  psychiatric facilities pursuant to CPL
article 730.  CPL § 730.60(6)(a); MHL § 29.11.

40.  Patients admitted pursuant to CPL § 730.40 are
subject to these provisions detailed in paragraphs thirty-
seven and thirty-eight even though the final order of
observation dismisses the criminal charges against the
individual. CPL § 730.60 (1).

41.  NYCRR Part 540 requires a hospital forensics
committee to review any application for the furlough,
transfer, conversion to civil status, discharge or
conditional release of any individual committed under CPL §
730.40.  14 NYCRR § 540.3.

42.  The forensics committee review requirement
described in paragraphs thirty-seven through forty-one
applies by its terms only to those individuals committed to
OMH facilities under the CPL article 730 but not under MHL

14

article 9, the civil commitment provisions of New York.   14

NYCRR Part 540.

43.   A psychiatric hospital may receive and retain an

allegedly mentally ill person upon the certificates of two

physicians who certify that the person has a mental illness

for which care and treatment is essential to such person's

welfare and whose judgment is so impaired that he is unable

to understand the need for such care and treatment. N.Y.

Mental Hyg. Law §§ 9.27(a); 9.01.

44.   In addition, case law requires that before a

hospital can involuntarily admit an allegedly mentally ill

individual, such person must pose a danger, i.e.,

substantial threat of physical harm, to himself or others.

E.g., Matter of Harry M., 96 A.D. 2d 201, 208, 468 N.Y.S. 2d

359, 365 (2d Dep't 1983); Matter of Carl C., 126 A.D. 640,

640, 511 N.Y.S. 2d 144, 145 (2d Dep't 1987).

45.   Before the hospital admits the patient, a third

physician, who is a member of the psychiatric staff of the

hospital, must also certify that the patient satisfies the

criteria for admission that is set forth in paragraphs

forty-three and forty-four.   N.Y. Mental Hyg. Law § 9.27(e).

46.   In addition to the method of civil commitment as

set forth above, a director of a hospital may, upon the

application of a director of community services or his

designee, receive a patient who in the opinion of the

director of community services has a mental illness for

15

which immediate in-patient care and treatment is appropriate and is likely to result in serious harm to the mentally ill person or others. N.Y. Mental Hyg. Law § 9.37(a).

47.   The need for immediate hospitalization must be confirmed by a hospital physician prior to admission and if the hospital wishes to involuntarily retain the patient beyond a seventy-two hour period, another hospital physician must certify that the patient is in need of involuntary care and treatment.   N.Y. Mental Hyg. Law § 9.37(a).

48.   The director of a hospital may also retain a patient whom a physician on the hospital staff has determined has a mental illness for which immediate in-patient care and treatment is appropriate and is likely to result in serious harm to the mentally ill person or others. N.Y. Mental Hyg. Law § 9.39(a).

49.   Likely to result in serious harm is defined as (1) a substantial risk of physical harm to himself as manifested by threats of or attempts at suicide or serious bodily harm or (2) other conduct demonstrating that he is dangerous to himself, or a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.   N.Y. Mental Hyg. Law §§ 9.01, 9.39(a).

50.   If the hospital wishes to involuntarily retain the patient beyond a forty-eight hour period, another hospital physician must confirm the findings of the initial examining

16

physician.  N.Y. Mental Hyg. Law § 9.39(a).

> Civil Patients - The Class of Individuals not Subject
> to the More Stringent Provisions of CPL § 730.60, MHL
> § 29.11(h) and 14 NYCRR Part 540.

51.  Upon information and belief, at least fifty per
cent of the patients involuntarily admitted to facilities
operated by the OMH were initially involuntarily
hospitalized pursuant to either New York Mental Hygiene Law
§ 9.37 or Mental Hygiene Law § 9.39, which are emergency
provisions of New York's civil commitment laws.

52.  Upon information and belief, approximately fifty
per cent of the patients admitted to OMH facilities pursuant
to MHL §§ 9.37 or 9.39 have been deemed to be a danger to
others.

53.  Both MHL §§ 9.37 and 9.39 prohibit the admission
of a patient deemed a danger to others only when such
individuals have engaged in homicidal or otherwise violent
behavior that demonstrates that the patient is a danger to
others.

54.  Accordingly, upon information and belief,
approximately twenty-five per cent of all involuntarily
hospitalized patients in OMH facilities have been deemed to
have engaged in homicidal or other violent behavior that has
demonstrated that the individual poses a danger to others.
These individuals are not subject to the provisions of CPL §
730.60(6)(a), MHL § 29.11(h) and 14 NYCRR Part 540.

55.  Under case law, patients admitted under the non-

17

emergency provisions of New York's civil commitment laws must be deemed to pose a substantial threat of physical harm to oneself or others.  However, as detailed above for patients admitted under the non-emergency provisions, New York law does not require the patient to have engaged in overt conduct that evinces the threat of physical harm.

## STATEMENT OF FACTS

A.  <u>Allegations Related to (1) the Plaintiff Class Certified by this Court on March 12, 1999, (2) the Subclass of Incompetent Defendants Certified by this Court on December 18, 1988 and (3) the Defendant Class of Local Criminal Court Judges</u>

1.  <u>The Continued Use of Statutes Declared Unconstitutional</u>

56.  On November 9, 1988, Supreme Court, Westchester County (Marbach, J.) declared, <u>inter</u> <u>alia</u>, that CPL § 730.60, MHL §29.11(h) and 14 NYCRR Part 540 violate the Equal Protection clauses of the United States and New York constitutions.  The court also declared that CPL § 730.40 violated the Due Process clauses of the United States and New York constitutions.

57.  The OMH did not appeal the judgment that technically applied to only the named plaintiffs.

58.  Instead, OMH developed the following policy:

(a)  Individual OMH facilities could confine any patient committed pursuant to CPL § 730.40 for a seventy-two hour period pursuant to the statute.  At the expiration of

18

the seventy-two hour period, the facility was to either
civilly commit or release the patient;

(b)   A facility could choose, if it so elected, to
apply the provisions of CPL § 730.60 and 14 NYCRR Part 540
to patients admitted pursuant to CPL article 730, but
facilities were not to automatically subject all patients
admitted pursuant to CPL § 730.40 to these provisions.

59.   Pursuant to the above policy, the overwhelming
percentage of incompetent defendants that have been remanded
have been civilly committed.

60.   A number of OMH facilities, including Pilgrim
Psychiatric Center, continue to automatically subject
patients admitted pursuant to article 730 to the provisions
of CPL § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540 or a
slightly less formal review panel, which each facility
refers to by a different name, such as a forensic cluster,
in-house commission, or special release committee
(collectively referred to as "informal forensic review").
These review panels are the functional equivalent of a
forensics committee that is required to be established
under CPL § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540.

61.   OMH facilities subject CPL § 730.40 patients to
either a formal forensic review or informal review even if
the patient has not been charged with a crime that involved
any sort of physical harm or threat of physical harm.

62.   Upon information and belief, an informal forensic

review impacts upon a patient in virtually the same manner as does the formal forensic review.

63.   By subjecting a CPL § 730.40 patient to an informal forensic review, the OMH delays the placement to any less restrictive status and the release of all CPL § 730.40 patients.

64.   The OMH does not automatically subject all civilly committed patients to either a formal forensic process or an informal forensic review.

65.   Furthermore, OMH will not release patients who have been remanded pursuant to CPL § 730.40 who are deemed not dangerous unless an out-patient placement that OMH deems appropriate can be obtained for the patient.

>       2.   The Unduly Long Confinement of Incompetent
>            Defendants

66.   Upon information and belief, many defendants who have been charged with misdemeanors and minor felonies and for whom a court has ordered a psychiatric evaluation pursuant to CPL § 730.30, remain in jail for a period of up to thirty days or longer pending a psychiatric evaluation and judicial assessment of competency.

67.   Upon information and belief, psychiatric assessments of competence last approximately thirty minutes in length.

68.   Upon information and belief, because it takes approximately thirty minutes to conduct competency evaluations, local criminal courts can obtain information

about a defendant's ability to stand trial in one week or less.

69. However, once a criminal court directs incompetency evaluations pursuant to Criminal Procedure Law article 730, instead of adjourning the criminal proceeding one week, it will adjourn the proceeding one month or longer.

70. For the reasons set forth in paragraphs seventy-one through seventy-seven, the actions of OMH, the local criminal courts and sheriffs result in the unnecessary and unconstitutional confinement of incompetent defendants.

71. After a local criminal court finds a defendant incompetent to stand trial to a minor crime or misdemeanor, it will issue a final order of observation pursuant to CPL § 730.40, and, if the defendant has been found to suffer from mental illness (as opposed to mental retardation), remand the defendant to the custody of the OMH Commissioner.

72. Once this occurs, the local criminal court is to notify OMH of this order so that it can designate a facility to which the incompetent defendant shall be remanded.

73. However, the local criminal court may not immediately notify OMH of the court order remanding the defendant to OMH custody pursuant to CPL § 730.40.

74. Once OMH receives notification of the order, it may take a number of days to designate an OMH facility to which the court should send the incompetent defendant.

21

75.  Once OMH designates a facility to which an incompetent defendant, the parties responsible for the transport of incompetent defendants to OMH facilities, including defendants Tisch and Horn, often take a number of days to transport the incompetent defendant once the party responsible for transport receives notice of the OMH designation.

76.  There is no necessary correlation between a finding of incapacity to stand trial to a minor felony or misdemeanor and a likelihood that the incompetent defendant poses a danger, i.e., substantial threat of physical harm, to himself or others.

77.  As a result of the conduct detailed in paragraph seventy-six, incompetent defendants remain confined in jail for an indeterminate amount of time when there are no charges pending and there has been no basis to believe that the individuals satisfy the civil commitment criteria.

B.   Allegations Relating to the Civil Commitment Subclass

1.   The Assessment of Dangerousness by Physicians at Facilitates Operated by OMH, HHC, Stony Brook and NUMC

78.  As detailed in paragraph forty-three of this complaint, because New York Mental Hygiene Law § 9.27 does not require a finding of dangerousness, prior to 1983, physicians could involuntarily hospitalize a mentally ill person without determining whether such person posed a danger to self or others.

79.   However, in 1983, both federal and state courts held that the United States Constitution prohibits the involuntary hospitalization of a nondangerous mentally ill person.  See Project Release v. Prevost, 722 F. 2d 960, 971 (2d Cir. 1983); Matter of Harry M., 96 A.D. 2d 201, 208, 468 N.Y.S. 2d 359, 365 (2d Dep't 1983).

80.   As a result of these court decisions, if a physician believes that a mentally ill person required in-patient hospitalization, the physician is also required to certify that the mentally ill person poses a danger to self or others.

81.   Under New York law, a person is said to be dangerous when he poses a substantial threat of causing physical harm to himself or others.  See e.g., Matter of Harry M., 96 A.D. 2d at 208, 468 N.Y.S. 2d at 365.

82.   There is no necessary correlation between suffering from mental illness and posing a danger to oneself or others.

83.   A determination of dangerousness is a risk assessment in which a physician evaluates the likelihood that the mentally ill person will cause harm to either self or others.

84.   Many symptoms of mental illness have no bearing on whether a person poses a danger to oneself or others.

85.   Likewise, the criteria for assessing dangerousness are distinct from symptoms of mental illness.

23

86.   When looking at whether a person is dangerous, a physician must look at a number of factors related to the potential for causing harm to oneself or others and, based upon an application of such factors, assess the likelihood that a person will cause harm.

87.   The most important criteria for assessing a threat of harm to others include the following: present substance abuse by an individual; a history of violent or otherwise harmful behavior; the presence or absence of homicidal ideation; the capacity to cause harm, e.g., the presence of a weapon; the presence of certain types of hallucinations, particularly command hallucinations, i.e., voices of a considerable degree of intensity that directs a person to harm someone or himself; a lack of impulse control; a lack of personal support; non-compliance with clinical intervention; and, stress.

88.   Significant criteria for assessing a threat of harm to self because of suicidal tendencies include the following: the presence of hallucinations or delusions; previous attempts that could have resulted in death; divorced, separated or single marital status, hopelessness, impulsivity; lack of future plans; signals of an intent to die; and, a recent loss.

89.   Significant criteria for assessing a threat of harm to self because of an inability to meet one's essential needs for food, clothing and shelter include the following:

24

whether a mentally ill person has suffered from malnutrition or dehydration; whether a mentally ill person has a plan to obtain adequate food, clothing and shelter, if a person is not meeting such needs independently; whether a mentally ill person has left serious medical problems go unattended; whether a mentally ill person understands the need to obtain adequate food, clothing and shelter and treat serious physical disorders; the availability of personal support; and, in the absence of personal support, the ability to live independently.

90.   Because physicians cannot involuntarily hospitalize a mentally person whom they believe requires in-patient care and treatment without certifying that they are dangerous, i.e., pose a substantial threat of physical harm to self or others, many physicians will certify that a mentally ill person is dangerous without carefully making a dangerousness assessment if the physicians believe that the mentally ill person warrants in-patient hospitalization because of his clinical condition.

91.   Accordingly, when determining whether a mentally ill person poses a danger to self or others as to require civil commitment, physicians at OMH and HHC operated facilities, Stony Brook and NUMC frequently will not look at the criteria set forth in paragraphs eighty-seven through eighty-nine.

92.   Instead, physicians at OMH operated and licensed

25

facilities will focus more on whether a person's clinical condition warrants in-patient hospitalization.

93.   The failure of physicians at OMH operated and licensed facilities to focus on significant criteria related to dangerousness results from the following factors detailed in paragraphs ninety-four through ninety-seven.

94.   Many psychiatrists want to treat individuals whom they believe warrant in-patient hospitalization and will label individuals dangerous so that they may confine them for compulsory treatment.

95.   In so doing, in order to justify an assessment of dangerousness, psychiatrists will often rely upon symptoms of mental illness instead of examining known risk factors without attempting to gather additional information, i.e., more specific information, as to why, or in what way, the particular symptoms of mental illness increase the likelihood that the subject of commitment will cause harm.

96.   OMH operated and licensed facilities do not provide sufficient training to ensure that physicians at OMH operated and licensed facilities develop sufficient expertise in assessing dangerousness.

97.   OMH operated and licensed facilities do not engage in sufficient oversight of their clinical staff to ensure that OMH physicians routinely focus on and apply all relevant factors related to a person's dangerousness when deciding if a person warrants involuntary hospitalization.

98.   In addition to the failure of physicians at OMH
operated and licensed facilities to apply the well-
documented criteria for dangerousness, for the reasons set
forth in paragraphs ninety-nine through one hundred and
three, because physicians at OMH operated and licensed
facilities involuntary hospitalize those mentally ill
individuals whom are deemed to need in-patient care and
treatment, the civil commitment examination process that
presently takes place at OMH operated and licensed
facilities results in the arbitrary certification of
mentally ill individuals.

99.   Physicians will certify a mentally ill person for
hospitalization after examining the person for as little as
five or ten minutes, if not a shorter period of time.

100. Particularly in regard to commitments facilitated
pursuant to the emergency provisions of New York's Mental
Hygiene Law, physicians will certify a mentally ill person
for hospitalization without determining whether or not such
person satisfies the criteria for hospitalization set forth
in the statute under which the mentally ill person was
committed.

101. A determination of whether a mentally ill person
is dangerous requires a physician to determine whether the
risk of harm is sufficiently great to warrant the
deprivation of liberty that civil commitment entails.

102. At no time has the OMH issued guidelines for

27

physicians employed at its facilities or at OMH licensed facilities that inform physicians of the likelihood and magnitude of harm that must exist before a physician certifies a mentally ill person for hospitalization.

103. As a result, each physician who evaluates a mentally ill person for civil commitment purposes imposes his or her values regarding the value of personal liberty when determining whether the threat of harm posed by a mentally ill person is sufficiently great as to warrant depriving such person of liberty.

104. In sum, psychiatrists pay lip service to the legal constraints imposed by the Mental Hygiene Law and the Constitution while they make decisions based on the clinical condition or the financial status of the subject of the commitment evaluation.

105. As a result of the actions detailed in paragraphs eighty-two through one hundred and four of this complaint, physicians at OMH operated and licensed facilities confine nondangerous mentally ill individuals.

2. <u>The Interrelationship Among OMH Facilities,</u>
<u>Municipal Hospitals and Private Hospitals</u>
<u>Licensed by OMH</u>

106. OMH works with local governments, hospitals operated by municipalities, private psychiatric hospitals, and private general hospitals with psychiatric units to develop a comprehensive system for the care and treatment of mentally ill individuals in New York State.

28

107. This comprehensive system includes determining the anticipated need, on a state-wide basis, to provide involuntary in-patient care and treatment.

108. This comprehensive system, including the system for the provision of involuntary in-patient care and treatment, includes working arrangements among OMH hospitals, hospitals operated by municipalities, private psychiatric hospitals, and private general hospitals with psychiatric units.

109. Under the OMH plan, acute care is provided by local general hospitals that are operated by both municipalities and private entities.

110. Because acute care is provided by local general hospitals, with the exception of the civil commitment of individuals remanded pursuant to Criminal Procedure Law § 730.40, nearly all civil commitments in New York occur in local general hospitals.

111. Accordingly, with perhaps a few exceptions, the only mentally ill individuals OMH will assess to determine whether or not they satisfy the civil commitment criteria are those individuals who have been found incompetent to stand trial and who have been remanded pursuant to Criminal Procedure Law § 730.40.

112. Under the OMH plan, OMH provides intermediate and long-term care to mentally ill individuals.

113. Furthermore, as a general rule, hospitals operated

by municipalities and private general hospitals with psychiatric units do not provide intermediate and long-term care for mentally ill individuals.

114. Accordingly, if a hospital operated by a municipality or a private general hospital with psychiatric unit believes that an involuntarily hospitalized patient at its hospital requires intermediate or long-term care, the hospital will attempt to transfer the patient to an OMH operated facility.

115. The interrelationship among OMH hospitals, hospitals operated by municipalities, private psychiatric hospitals, and private general hospitals with psychiatric units is so detailed that when OMH assesses the number of beds needed for the provision of acute in-patient treatment, i.e., the provision of treatment to civil committed individuals, OMH assess the availability of beds in hospitals operated by municipalities, private psychiatric hospitals, and private general hospitals with psychiatric units.

116. OMH is able to eliminate its role in the civil commitment system because under New York Mental Hygiene Law § 31,02(a)(2), public and private general hospitals may not operate a psychiatric unit unless OMH has issues an operating certificate and, unless a waiver has been obtained, OMH will not issue an operating certificate unless the hospital has agreed to service a catchment area for the

30

evaluation of patients who may require civil commitment.

117. In addition, OMH has undertaken initiatives which are intended to achieve increased participation by general hospitals, public and private, in their role in the civil commitment process.

118. Such initiatives include financial incentives to community hospitals, both public and private, who provide involuntary care and treatment to mentally ill individuals.

119. Such incentives include the development of Medicaid rate methodologies that are designed to increase the number of mentally ill individuals to whom in-patient care and treatment is provided.

120. In addition, in Nassau and Suffolk counties, nearly all candidates for civil commitment are first evaluated at Nassau County Medical Center and Stony Brook University Medical Center, facilities operated by Nassau County and the State of New York respectively.

121. Once an allegedly mentally ill person is evaluated at Nassau County Medical Center or Stony Brook University Medical Center and is deemed to require in-patient hospitalization, depending on such factors as the availability of beds, Nassau County Medical Center and Stony Brook University will either confine the person to its own facility and transport the individual to a private hospital where he or she will be admitted.

122. In sum, in New York State there is one unified

31

civil commitment operation which includes participation of OMH hospitals, hospitals operated by municipalities, private psychiatric hospitals, and private general hospitals with psychiatric units.

Individual Allegations

Gregory Monaco

123. In March, 1998, plaintiff Gregory Monaco was charged with Harassment and Criminal Contempt, second degree.

124. As a result of these charges, Mr. Monaco was confined in the Riverhead Correctional Facility, i.e., the Suffolk County jail.

125. At the time of this confinement, Mr. Monaco suffered from bipolar disorder, i.e., manic depression.

126. The indicated treatment for bipolar disorder is lithium.

127. At the time of his confinement at Riverhead Correctional Facility, Mr. Monaco had been on a treatment regimen of lithium.

128. Initially, upon admission to the Riverhead Correctional Facility, a physician at the jail, other than defendant Packard, prescribed lithium for Mr. Monaco.

129. Upon information and belief, shortly after Mr. Monaco' admission to Riverhead Correctional Facility, defendant Packard became responsible for Mr. Monaco's treatment at the jail.

130. Upon information and belief, this responsibility included the provision of drug treatment to address Mr. Monaco's psychiatric condition.

131. During the time that defendant Packard was treating Mr. Monaco, the administration of lithium for Mr. Monaco was discontinued.

132. Shortly after his detention at the Riverhead Correctional Facility began, Mr. Monaco informed defendant Packard that he needed lithium for his psychiatric condition.

133. In addition, Mr. Monaco made numerous requests to talk to defendant Packard so that he could more fully address his treatment needs.

134. Both the request for medication and the request to speak with Dr. Packard were ignored.

135. The failure to administer lithium resulted in an exacerbation of Mr. Monaco's clinical condition to the point that physicians at Pilgrim Psychiatric Center believed that Mr. Monaco warranted in-patient hospitalization.

136. Subsequent to the filing of an accusatory instrument as detailed in paragraph one hundred and twenty-three, East Hampton Town Justice Court believed that Mr. Monaco may have lacked the capacity to stand trial.

137. On April 9, 1998, East Hampton Justice Court (Whitaker, J.) ordered two psychiatrists to evaluate Mr. Monaco to determine whether or not he lacked the capacity to

33

stand trial.

138. Such an evaluation could have taken place within one week.

139. However, the court appointed psychiatrists did not complete their evaluations and write their report until April 20, 1998 and April 21, 1998 respectively.

140. Both psychiatrists concluded that Mr. Monaco lacked the capacity to stand trial.

141. Although both court appointed psychiatrists completed their assessments by April 21st, East Hampton Justice Court did not hold a hearing on Mr. Monaco' competence until May 5, 1998.

142.   On May 5, 1998, East Hampton Justice Court (Cahill, J.) concluded that Mr. Monaco lacked the capacity to stand trial.

143. Neither psychiatrist who assessed Mr. Monaco's competence to stand trial concluded that Mr. Monaco posed a danger to himself or others.

144. Neither psychiatrist noted that Mr. Monaco manifested characteristics associated with dangerous conduct that are detailed in paragraphs eighty-seven through eighty-nine of this complaint.

145. On May 5, 1998, East Hampton Justice Court (Cahill, J.) issued a Final Order of Observation remanding Mr. Monaco to the custody of the Commissioner of OMH.

146. The court also ordered that Mr. Monaco remain

confined at the Riverhead Correctional Facility pending a designation by the OMH Commissioner of a facility to which Mr. Monaco could be sent.

147. Pursuant to CPL § 730.40, the court dismissed the criminal charges against Mr. Monaco.

148. Mr. Monaco remained confined in the Riverhead Correctional Facility until May 8, 1998.

149. On May 8, 1998, the Suffolk County Sheriff transported Mr. Monaco to Pilgrim Psychiatric Center, an OMH facility, where he was involuntarily admitted pursuant to CPL § 730.40.

150. Pursuant to OMH policy detailed in paragraph fifty-eight, PPC involuntarily confined Mr. Monaco for approximately seventy-two hours pursuant to CPL § 730.40.

151. On May 11, 1998, defendants Sarwal and Palma-Acquino certified Mr. Monaco for hospitalization pursuant to New York Mental Hygiene Law § 9.27.

152. In certifying Mr. Monaco for hospitalization, defendants Sarwal and Palma-Acquino concluded that Mr. Monaco posed a danger to himself or others.

153. However, in making this determination, defendant Sarwal failed to address whether or not Mr. Monaco was presently abusing drugs or alcohol, had a history of violent or otherwise dangerous behavior, presently manifested homicidal or suicidal ideation, had the capacity to cause harm, manifested hallucinations, particularly command

35

hallucinations, or lacked impulse control.

154. At the time of this certification, Mr. Monaco did not pose a danger to himself or others.

155. Although defendant Sarwal failed to address significant criteria relating to dangerousness detailed in paragraphs eighty-seven through eighty-nine, defendant Sarwal noted that Mr. Monaco ``exhibits poor judgment and has no insight into his illness.  He needs further care and treatment as an inpatient.''

156. Accordingly, upon information and belief, the conclusion by defendant Sarwal that Mr. Monaco was dangerous was a function of a desire to treat and was pretextual in nature.

157. The pretextual nature of defendant Sarwal's conclusions can be evinced by a statement in which defendant Sarwal noted that Mr. Monaco ``admits. . .to breaking chairs and throwing them out a window.''   While Mr Monaco broke a chair, he did so when he stood on an old chair reaching for an object in a kitchen cabinet.  He then tossed the pieces not out of a window but out the kitchen door leading to the garbage.

158. While in certifying Mr. Monaco for hospitalization, defendant Palma-Acquino noted that Mr. Monaco had a history of psychiatric hospitalization and substance abuse, defendant Palma-Acquino failed to address whether Mr. Monaco had a history of dangerous behavior and

presently abused drugs or alcohol.

159. Like defendant Sarwal, defendant Palma-Acquino failed to examine the other significant criteria related to dangerousness detailed in eighty-seven through eighty-nine.

160. Similar to defendant Sarwal, defendant Palma-Acquino, noted that Mr. Monaco ``needs further inpatient evaluation and treatment.''

161. On May 11, 1998, pursuant to Mental Hygiene Law § 9.27, defendant Tuzel confirmed the need for involuntary hospitalization.

162. Pursuant to the certifications of defendants Sarwal, Palma-Acquino and Tuzel, Mr. Monaco remained confined involuntarily until July, 7, 1998.

163. Between May 8, 1998 and July 7, 1998, Mr. Monaco's clinical condition improved.

164. Because Mr. Monaco's initial period of confinement pursuant to New York Mental Hygiene Law § 9.27 ended on or about April 7, 1998, PPC would have had to apply for a further order of retention pursuant to New York Mental Hygiene Law § 9.33 in order to further confine Mr. Monaco unless Mr. Monaco agreed to remain as a voluntary patient.

165. If PPC applied to further retain involuntarily Mr. Monaco, he would have been able to challenge the need for further confinement in state court.

166. At this time, Mr. Monaco did not wish to remain at PPC and wanted to challenge any attempt to further confine

37

him.

167. However, on or about July 7, 1998, defendant Dave approached Mr. Monaco and asked him to sign papers in which he agreed to become a ``voluntary'' patient.

168. Although Mr. Monaco did not wish to remain at PPC, defendant Dave informed Mr. Monaco that unless he agreed to become a voluntary patient, Mr. Monaco could not participate in a vocational rehabilitation program would have to remain on a locked ward.

169. Defendant Dave also informed Mr. Monaco that if he did not agree to become a voluntary patient PPC would confine him indefinitely.

170. In this conversation, defendant Dave stated that his unwillingness to become a voluntary patient would be viewed as a lack of cooperation with treatment and Mr. Monaco would be viewed as a long-term patient.

171. While Mr. Monaco did not wish to remain at PPC and wished to challenge his further confinement, as a result of the statements by defendant Dave, Mr. Monaco agreed to become a voluntary patient under New York Mental Hygiene Law § 9.13.

172. As a result of becoming a voluntary patient, Mr. Monaco gave up his right to challenge in court his confinement at PPC.

173. Upon information and belief, because PPC automatically subjects patients admitted pursuant to CPL §

38

730.40 to at least an informal review process, when clinicians treating Mr. Monaco decided to grant off-ward activities to Mr. Monaco, the provision of such activities had to be approved by a second panel of doctors.

174. Similarly, when clinicians treating Mr. Monaco decided to discharge Mr. Monaco, the discharge of Mr. Monaco had to be approved by a second panel of doctors.

175. The requirement of approval of off-ward activities and discharge by a second panel of doctors delayed the implementation of these actions.

176. Throughout Mr. Monaco's confinement, he wanted PPC to discharge him to a setting at which he could live independently, i.e., on his own.

177. However, consistent with the OMH policy detailed in paragraph sixty-five, pursuant to which OMH facilities discharge individuals remanded pursuant to CPL § 730.40 to only supervised settings that PPC deems appropriate, PPC refused to discharge Mr. Monaco to an independent setting.

178. Instead, PPC insisted on discharging Mr. Monaco to a supervised community residence.

179. Mr. Monaco had to wait until an opening at a community residence became available.

180. Mr. Monaco remained as in-patient at PPC until on or about September 9, 1998 when PPC discharged him to a community residence.

181. Upon information and belief, because PPC acted consistently with the OMH policy detailed in paragraph sixty-five, PPC failed to discharge Mr. Monaco to an independent setting and prolonged his confinement.

Plaintiff Mental Disability Law Clinic

182. Plaintiff Mental Disability Law Clinic, Jacob D. Fuchsberg Law Center ("Clinic"), is a Protection and Advocacy agency which, pursuant to 42 U.S.C. § 10801 et. seq. is authorized to, inter alia, pursue legal remedies on behalf of institutionalized individuals who suffer from mental illness and provide legal representation to such individuals.

183. Because physicians at OMH operated and licensed facilities certify mentally ill individuals for involuntary hospitalization (1) without applying the known criteria for risk assessment, (2) on the basis of psychiatric examinations that last five or ten minutes, and (3) without determining whether the mentally ill person satisfies the criteria for hospitalization under the statutory provision

40

pursuant to which the person was committed, many individuals who believed that they have been wrongfully confined in a psychiatric facility have sought, and been provided with, the services of the Clinic.

184. These unlawful practices have resulted in the Clinic utilizing its resources to litigate claims on behalf of individuals who have been subject to the unlawful practices set forth above.

185. The Clinic has limited funds with which it is able to pursue remedial action on behalf of its clients.

186. The litigation filed on behalf of individuals harmed by the class-wide practices set forth in this complaint has required the Clinic to devote a substantial amount of its limited resources to the prosecution of actions resulting from these systemic violations that would not have occurred if physicians at facilities operated and supervised by the defendants carefully and correctly assessed mentally ill individuals for dangerousness.   Such actions include, but are not limited to Rodriquez v. City of New York, 72 F. 3d 1051 (2d Cir. 1995); Demarco v. Sadiker, 897 F. Supp. 693 (E.D.N.Y. (1995).  Presently, the Clinic has clients or constituents who have been subject to the practices detailed in paragraphs ninety-four through one-hundred and five by physicians under the supervision of the defendants.

187. The litigation filed on behalf of individuals

41

harmed by the practices set forth in this complaint
diminishes the ability of the Clinic to provide services to
other individuals who require assistance.

188. The delay in transporting defendants found
incompetent to stand trial pursuant to Criminal Procedure
Law § 730.40 from jail to OMH facilities by defendant Horn
has resulted in the Clinic having to devote resources to
help rectify the problem.

<u>LEGAL ALLEGATIONS</u>

<u>Claims for Injunctive Relief on Behalf of the
Subclass of Incompetent Defendants</u>

<u>First Cause of Action</u>

189. Plaintiffs reallege paragraphs one through one
hundred and eighty-eight.

190. By maintaining a system by which defendants who
may lack capacity to stand trial are required to remain in
jail for a period of up to thirty days or longer while a
question of capacity is before the local criminal court,
defendant Cahill and the defendant class of judges violate
the Due Process Clause of the Fourteenth Amendment to the
United States Constitution and 42 U.S.C. § 1983 because the
duration of confinement does not bear a reasonable relation
to its purpose.

<u>Second Cause of Action</u>

191. Plaintiffs reallege paragraphs one through one
hundred and eighty-eight.

192. By failing to notify OMH of the existence of an

42

incompetent defendant who may well be found incompetent to stand trial during a period of time that would enable OMH to designate a facility to which the defendant could be sent if he was found incompetent prior to the date of the incompetency hearing defendant Cahill and the defendant class of judges violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 because the duration of the confinement of the incompetent defendant does not bear a reasonable relation to its purpose and such deprivation of liberty is not the least intrusive possible while meeting the legitimate interests of the state.

### Third Cause of Action

193. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

194. By automatically subjecting plaintiff Greg Monaco and the plaintiff class members to either the requirements of CPL § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540 or an informal forensic review, while not automatically subjecting civilly admitted patients to the same provisions or informal process, defendant Carpinello denies such individuals equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Fourth Cause of Action

195. Plaintiffs reallege paragraphs one through one

43

hundred and eighty-eight.

196. By failing to designate a facility to which an incompetent defendant is to be transferred prior to the date of a hearing on a defendant's capacity, defendant Carpinello violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 because such failure to act results in confinement of incompetent defendants the duration of which does not bear a reasonable relation to its purpose and such deprivation of liberty is not the least intrusive possible while meeting the legitimate interests of the state.

<u>Fifth Cause of Action</u>

197. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

198. The involuntary confinement by defendant Carpinello of the plaintiff and plaintiff class members who are not dangerous but for whom there has been no out-patient residence obtained violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

<u>Sixth Cause of Action</u>

199. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

200. By failing to immediately transfer Mr. Monaco and other incompetent defendants from the time they receive notification of an OMH designation, defendants Tisch and

Horn violate the violate the Fourth and Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 because such failure to act results in the unnecessary confinement of incompetent defendants for whom there is no necessary basis to believe satisfies the civil commitment criteria, further results in confinement of incompetent defendants whose nature does not bear a reasonable relation to its purpose and such deprivation of liberty is not the least intrusive possible while meeting the legitimate interests of the state.

### Claims for Injunctive Relief on Behalf of the Civil Commitment Subclass

### Seventh Cause of Action

201. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

202. As a result of physicians at OMH and HHC operated facilities, Stony Brook and NUMC certifying individuals who have been evaluated for civil commitment purposes as dangerous because the physicians believe that such individuals' clinical condition warrants in-patient care and treatment, defendants Carpinello, Chu, Skodnek, Sedler, and Licht are responsible for the confinement of nondangerous individuals, which violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Eighth Cause of Action

203. Plaintiffs reallege paragraphs one through one

45

hundred and eighty-eight.

204. By failing to examine and employ significant criteria related to the likelihood of causing harm when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony Brook and NUMC make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individuals, both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Ninth Cause of Action

205. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

206. By conducting clinical evaluations that frequently do not last more than five or ten minutes when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony Brook and NUMC make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individual, both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Tenth Cause of Action

207. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

208. By failing to apply the statutory criteria of the

46

provisions of the New York Mental Hygiene Law pursuant to which the physicians act, physicians at HHC operated facilities, Stony Brook and NUMC violate the procedural component of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Eleventh Cause of Action

209. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

210. The failure of physicians at OMH and HHC operated facilities, Stony Brook and NUMC to use guidelines that inform physicians of the likelihood and magnitude of harm that must exist before a physician certifies a mentally ill person for hospitalization results in the arbitrary exercise of authority by physicians at OMH and HHC operated facilities, Stony Brook and NUMC when they certify an allegedly mentally ill person for involuntary hospitalization, which violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### Pendent State Claims for Injunctive Relief on Behalf of the Civil Commitment Subclass

### Twelfth Cause of Action

211. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

212. As a result of certifying individuals who have been evaluated for civil commitment purposes as dangerous

because it is believed that such individuals' clinical
condition warrants in-patient care and treatment, physicians
at HHC operated facilities and NUMC falsely imprison members
of the civil commitment.

### Thirteenth Cause of Action

213. Plaintiffs reallege paragraphs one through one
hundred and eighty-eight.

214. By failing to examine significant criteria related
to the likelihood of causing harm when examining allegedly
mentally ill individuals for civil commitment purposes,
physicians at HHC operated facilities and NUMC negligently
diagnose members of the civil commitment subclass and such
action results in the wrongful confinement of nondangerous
individuals.

### Fourteenth Cause of Action

215. Plaintiff realleges paragraphs one through one
hundred and eighty-eight.

216. By conducting clinical evaluations that frequently
do not last more than five or ten minutes when examining
allegedly mentally ill individuals for civil commitment
purposes, physicians at HHC operated facilities and NUMC
negligently diagnose members of the civil commitment
subclass and such action results in the wrongful confinement
of nondangerous individuals.

### Fifteenth Cause of Action

217. Plaintiffs reallege paragraphs one through one

hundred and eighty-eight.

218. By failing to apply the statutory criteria of the provisions of the New York Mental Hygiene Law pursuant to which the physicians act, physicians at HHC operated facilities and NUMC falsely imprison members of the plaintiff subclass of individuals facing civil commitment.

### Individual Claims for Damages

### Sixteenth Cause of Action

219. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

220. By discontinuing a treatment regimen of lithium in the Suffolk Correctional Facility when it was the unquestioned treatment of choice for the bipolar disorder that the plaintiff suffered from, defendant Packard provided medical treatment that was both deliberately indifferent to the plaintiff's medical needs and constituted a substantial departure from accepted judgment, practices and standards. As a result, defendant Packard violated the Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

### Seventeenth Cause of Action

221. Plaintiffs reallege paragraphs one through one hundred and eighty-eight.

222. By authorizing the confinement of the plaintiff when he did not pose a danger to himself or others, defendants, defendants Sarwal, Palma-Acquino and Tuzel

49

violated the Due Process Clause of the Fourteenth Amendment
to the United States Constitution and 42 U.S.C. § 1983.

### Eighteenth Cause of Action

223. Plaintiffs reallege paragraphs one through one
hundred and eighty-eight.

224. By threatening to (1) confine the plaintiff
indefinitely and (2) withhold the provision of off-ward
treatment unless the plaintiff agreed to remain as a
voluntary patient, defendant Dave impermissibly induced a
waiver of the plaintiff's rights to challenge his
confinement under the Due Process Clause of the Fourteenth
Amendment to the United States Constitution and further
violated 42 U.S.C. § 1983.

### Nineteenth Cause of Action

225. Plaintiffs reallege parapraphs one through one
hundred and eighty-eight.

226. By discontinuing a treatment regimen of lithium in
the Suffolk Correctional Facility when it was the
unquestioned treatment of choice for the bipolar disorder
that the plaintiff suffered from, defendant Packard
committed medical malpractice.

WHEREFORE, the plaintiff requests the following relief:

a.    Judgment against defendant Cahill and the
defendant class of judges pursuant to 28 U.S.C. § 2201 and
Fed. R. Civ. P. 57 declaring that by maintaining a system by
which defendants who may lack capacity to stand trial are

required to remain in jail for a period of up to thirty days or longer while a question of capacity is before the local criminal court, defendant Cahill and the defendant class of judges violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 because the duration of confinement does not bear a reasonable relation to its purpose;

b. Judgment against defendant Cahill and the defendant class of judges pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by failing to notify OMH of the existence of an incompetent defendant who may well be found incompetent to stand trial during a period of time that would enable OMH to designate a facility to which the defendant could be sent if he was found incompetent prior to the date of the incompetency hearing defendant Cahill and the defendant class of judges violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 because the duration of the confinement of the incompetent defendant does not bear a reasonable relation to its purpose and such deprivation of liberty is not the least intrusive possible while meeting the legitimate interests of the state;

c. Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by automatically subjecting plaintiff Greg Monaco and the plaintiff class members to either the requirements of CPL §

51

730.60, MHL § 29.11(h) and 14 NYCRR Part 540 or an informal forensic review, while not automatically subjecting civilly admitted patients to the same provisions or informal process, defendant Carpinello denies such individuals equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

     d.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by failing to designate a facility to which an incompetent defendant is to be transferred prior to the date of a hearing on a defendant's capacity, defendant Carpinello violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 because such failure to act results in confinement of incompetent defendants the duration of which does not bear a reasonable relation to its purpose and such deprivation of liberty is not the least intrusive possible while meeting the legitimate interests of the state;

     e.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that the involuntary confinement by defendant Carpinello of the plaintiff and plaintiff class members who are not dangerous but for whom there has been no out-patient residence obtained violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §

1983;

  f. Judgment against defendants Tisch and Horn pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by failing to immediately transfer incompetent defendants from the time they receive notification of an OMH designation, defendants Tisch and Horn violate the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 because such failure to act results in the unnecessary confinement of incompetent defendants for whom there is no necessary basis to believe satisfies the civil commitment criteria, further results in confinement of incompetent defendants whose nature does not bear a reasonable relation to its purpose and such deprivation of liberty is not the least intrusive possible while meeting the legitimate interests of the state;

  g. Judgment against defendants Campinello, Chu, Sedler, Skodnek and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that as a result of certifying individuals who have been evaluated for civil commitment purposes as dangerous because it is believed that such individuals' clinical condition warrants in-patient care and treatment, physicians at OMH and HHC operated facilities, Stony Brook, NUMC and LICH authorize the confinement of nondangerous individuals, which violates the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §

1983;

h.    Judgment against defendants Campinello, Chu, Sedler, Skodnek and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by failing to examine and employ significant criteria related to the likelihood of causing harm when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony Brook, NUMC and LICH make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individuals, both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

i.    Judgment against defendants Campinello, Chu, Sedler, Skodnek, and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by conducting clinical evaluations that frequently do not last more than five or ten minutes when examining allegedly mentally ill individuals for civil commitment purposes, physicians at OMH and HHC operated facilities, Stony Brook, NUMC and LICH make clinical determinations that do not promise some degree of accuracy and such decisions result in the confinement of nondangerous individuals, both of which violate the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983;

j.    Judgment against defendants Chu, Sedler, Skodnek,

54

and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P.
57 declaring that by failing to apply the statutory criteria
of the provisions of the New York Mental Hygiene Law
pursuant to which the physicians act, physicians at HHC
operated facilities, Stony Brook, NUMC, and LICH violate the
procedural component of the Due Process Clause of the
Fourteenth Amendment to the United States Constitution and
42 U.S.C. § 1983;

      k.   Judgment against defendants Campinello, Chu,
Sedler, Skodnek and Licht pursuant to 28 U.S.C. § 2201 and
Fed. R. Civ. P. 57 declaring that the failure to use
guidelines that inform physicians of the likelihood and
magnitude of harm that must exist before a physician
certifies a mentally ill person for hospitalization by the
physicians at OMH and HHC operated facilities, Stony Brook,
NUMC and LICH results in the arbitrary exercise of authority
by physicians at OMH and HHC operated facilities, Stony
Brook NUMC and LICH when the physicians certify an allegedly
mentally ill person for involuntary hospitalization, which
violates the Due Process Clause of the Fourteenth Amendment
to the United States Constitution and 42 U.S.C. § 1983;

      l.   Judgment against defendants Chu, Skodnek, and
Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57
declaring that as a result of certifying individuals who
have been evaluated for civil commitment purposes as
dangerous because it is believed that such individuals'

clinical condition warrants in-patient care and treatment, physicians at HHC operated facilities, NUMC and LICH falsely imprison members of the plaintiff subclass of individuals facing civil commitment;

m. Judgment against defendants Chu, Skodnek, and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by failing to examine significant criteria related to the likelihood of causing harm when examining allegedly mentally ill individuals for civil commitment purposes, physicians at HHC operated facilities, NUMC, and LICH negligently diagnose members of the plaintiff subclass of individuals facing civil commitment and such action results in the wrongful confinement of nondangerous individuals;

n. Judgment against defendants Chu, Skodnek, and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that by conducting clinical evaluations that frequently do not last more than five or ten minutes when examining allegedly mentally ill individuals for civil commitment purposes, physicians at HHC operated facilities, NUMC and LICH negligently diagnose members of the plaintiff subclass of individuals facing civil commitment and such action results in the wrongful confinement of nondangerous individuals;

o. Judgment against defendants Chu, Skodnek, and Licht pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57

declaring that by failing to apply the statutory criteria of the provisions of the New York Mental Hygiene Law pursuant to which the physicians act, physicians at HHC operated facilities, NUMC and LICH falsely imprison members of the civil commitment subclass;

p.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2202 enjoining defendant Carpinello from subjecting plaintiff Monaco and member of the subclass of incompetent defendants to Criminal Procedure Law § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540 or an informal forensic review in lieu of the provisions of CPL § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540 by virtue of their status as individuals remanded pursuant to CPL § 730.40;

q.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2202 directing the defendant to engage in appropriate training of OMH staff members to ensure that OMH staff members will not subject any plaintiff class member to CPL § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540 or an informal forensic review in lieu of the provisions of CPL § 730.60, MHL § 29.11(h) and 14 NYCRR Part 540 by virtue of their status as individuals remanded pursuant to CPL § 730.40;

r.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2202 directing the defendant to engage in appropriate training of OMH staff members to ensure that OMH physicians fully understand how and why an incompetent

defendant is not necessarily dangerous and is not necessarily more dangerous than civil patients confined at non-secure OMH facilities;

s.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2202 directing the defendant to designate an OMH facility to which a defendant for whom there has been a determination of incompetence by a court appointed expert. Such designation shall take place prior to the date of the scheduled hearing at which the court will adjudicate the defendant's competence;

t.   Judgment against defendant Carpinello pursuant to 28 U.S.C. § 2202 enjoining her from confining any individual remanded pursuant to CPL § 730.40 who is not determined to be dangerous pursuant to a risk assessment scale detailed in paragraph w of this ad damnum clause whether or not OMH has secured an out-patient placement that it deems appropriate;

u.   Judgment against defendants Tisch and Horn pursuant to 28 U.S.C. § 2202 directing these defendants to transport individuals remanded pursuant to Criminal Procedure Law § 730.40 the same day that a local criminal court has issued an order of remand pursuant to CPL § 730.40;

v.   Judgment against defendants Carpinello, Chu, Sedler, Skodnek, and Licht pursuant to 28 U.S.C. § 2202 directing them to engage in appropriate training as to ensure that physicians under their authority will (1)

58

examine all relevant clinical criteria when assessing an individual's dangerousness and (2) no longer label an individual dangerous because such individual's clinical condition warrants in-patient hospitalization;

w.   Judgment against defendants Carpinello, Chu, Sedler, Skodnek and Licht pursuant to 28 U.S.C. § 2202 prohibiting physicians under their authority from certifying a mentally ill person for hospitalization unless the mentally ill person is deemed to pose a substantial risk of harm pursuant to a risk assessment scale imposed or approved by this Court that takes into account the likelihood and magnitude of possible harm;

x.   Judgment against defendants Carpinello, Chu, Sedler, Skiodnek, and Licht pursuant to 28 U.S.C. § 2202 prohibiting physicians under their authority from certifying a mentally ill person for hospitalization unless the certifying physician conducts a thorough and careful evaluation of the subject for commitment;

y.   Judgment against defendants Carpinello, Chu, Sedler, Skodnek, and Licht pursuant to 28 U.S.C. § 2202 prohibiting physicians under their authority from certifying a mentally ill person for hospitalization unless the certifying physician determines that the subject of commitment satisfies the statutory criteria pursuant to which the certification is made;

z.   Judgment against defendants Carpinello, Chu,

Sedler, Skodnek, and Licht pursuant to 28 U.S.C. § 2202
directing such individuals to contribute a sum of money to
be determined at of after trial to the New York State Office
of Court Administration (``OCA'') so that OCA will have
sufficient funds to procure the services of a psychiatric
expert who will be able to (1) evaluate any member of the
proposed subclass of individuals facing civil commitment who
wishes to challenge his or her involuntary hospitalization
and (2) testify within one week of such court appointment;

    aa.  Judgment against defendants Carpinello, Chu,
Sedler, Skodnek, and Licht pursuant to 28 U.S.C. § 2202
directing them to videotape all psychiatric evaluations of
patients conducted by physicians are who evaluating
allegedly mentally ill individuals to determine whether or
not they satisfy the criteria for involuntary certification
pursuant to Mental Hygiene Law article 9;

    bb.  Damages against defendants Packard, Sarwal, Palma-
Acquino, Tuzel and Dave in an amount to be determined at
trial;

    cc.  Attorneys fees pursuant to 42 U.S.C. § 1988;

    dd.  Costs and disbursements;

ee.   Any other relief that this Court may deem just and proper.

Dated: Huntington, New York
      December 17, 2003


_WILLIAM M. BROOKS_
WMB 1544
<u>Attorney for Plaintiff</u>
Mental Disability Law Clinic
Touro College
Jacob D. Fuchsberg Law Center
300 Nassau Road
Huntington, New York 11743
(631) 421-2244, ext. 331